[Civ. No. 15185.   Second Dist., Div. One.   July 1, 1946.]

FREDERICK EARL TITENSOR, Appellant, v. JANE TITENSOR, Respondent.

Perry F. Backus for Appellant.

Mildred Gilmore for Respondent.

YORK, P. J.—Plaintiff husband filed the instant action for divorce on February 26, 1945, grounded on the desertion of defendant wife as of November 23, 1943. Among other things the complaint herein alleges that on November 30, 1943, de-

fendant wife "wrongfully" commenced an action for divorce against said plaintiff on the ground of cruelty, being suit numbered D-249656 (hereinafter referred to as the first action); that on or about December 8, 1944, the trial court rendered its judgment in said first action denying a divorce to said wife, which judgment has never been appealed from, vacated, modified or set aside, and is now final; that in said first action the court found that the wife separated from the husband about November 23, 1943, and from then up to and including November 23, 1944, she remained so separated from said husband, against his will and without his consent.

In her answer filed herein, defendant denied that she "wrongfully" commenced the first action; admitted that it was commenced and tried, and alleged that all the facts were not placed before the court as to the alleged cruelty of said husband. Thereafter, having obtained leave therefor, defendant wife filed her cross-complaint herein, in which she alleged a course of cruel treatment inflicted upon her by plaintiff husband during the year 1943, as a result of which, coupled with his repeated threats against her life, she left the family home on November 23, 1943; that by such conduct, plaintiff deserted defendant, "still continues to desert and abandon her, and to live apart from her without just cause and without her consent." To his answer to said cross-complaint, plaintiff husband attached, as Exhibit A, a copy of the findings of fact and conclusions of law made in the first action, and pleaded the judgment rendered therein as res judicata to the matters alleged in the said cross-complaint.

The trial court found herein that "plaintiff and cross-defendant inflicted upon defendant and cross-complainant a course of cruelty; that he drank excessively; that when under the influence of alcohol he became abusive and made threats against her life, and further that he drank to such an extent that he was arrested for driving an automobile while under the influence of alcohol in the City of Glendale; that because of such course of conduct defendant and cross-complainant was forced to leave the family home."

From that portion of the judgment which was thereafter entered awarding an interlocutory decree of divorce to defendant and cross-complainant and denying a divorce to him, plaintiff prosecutes this appeal.

It is here urged (1) that the decree in the first action is res judicata and a bar to respondent's cross-complaint charging

cruelty in the instant action; (2) that the findings do not support the judgment.

The court in the first action found substantially as follows: That wife separated from husband four times prior to November 23, 1943, after each of which they became reconciled, resumed marital relations and condoned past offenses of either or both; that on November 23, 1943, wife again separated from husband and has remained separate and apart from him ever since, against his will and without his consent, and without any just or sufficient cause or reason; that husband did not periodically or at all, become intoxicated, nor did he become intoxicated and remain so for one or two days or at all; that husband did not on December 4, 1938, or at any time, violently strike wife or assault her, either as alleged in her amended complaint or otherwise; that any arguments or quarrels had by the parties were caused as much by wife as by husband; that husband was not at any time sullen or morose, and did not refuse to communicate with wife, as alleged, but that wife was the cause of any disagreements between them, if any; that husband did not use vile or profane language toward wife, nor did he use abusive language to or toward her, as alleged; that husband did not at any time request or urge wife to obtain a divorce, has not wanted and does not now wish a divorce from his wife; that husband has been a good provider for his wife and child at all times and has provided all the common necessaries of life, as well as many luxuries in accordance with the station in life of said parties; that wife offered no legal proof that husband was arrested and prosecuted for drunk driving, "and therefore the Court finds said allegations of her amended complaint to be untrue"; that if wife called police officers to prevent husband from abusing or striking her, as alleged, the said acts, if any, were thereafter forgiven and condoned by wife, and said "condonation has never been revoked either by the subsequent acts of" husband or by the wife; that no act or acts of husband have caused wife mental anguish or suffering, nor have any act or acts of husband caused her to become sick in mind or body; that wife has incurred no bills for services of physicians or doctors since the marriage of said parties because of any wrongful act or acts on the part of husband; that wife voluntarily relinquished her rights in the community property of the parties, leaving the same in the control of husband, who is entitled to the management and control thereof; that wife has

heretofore received sufficient moneys from husband for attorneys' fees; that each of the parties is a fit person to have the care and custody of the minor child, but because of the tender age of said child, wife shall have care and custody, with the right of reasonable visitation on the part of husband.

From said findings the court concluded: "That a divorce be denied to plaintiff (wife) and that judgment be for the defendant (husband) in accord with the foregoing findings of fact."

In connection with his first point, appellant urges that it was improper to admit evidence of any act or acts of cruelty charged against him which occurred prior to November 30, 1943, the date on which the complaint in the first action was filed, because such matters were adjudicated in the first action. ▌ It is settled "that parties can litigate to judgment the same thing but once. The consequence whereof is that after a divorce suit has terminated in favor of either the plaintiff or the defendant, no second suit can be brought to try anew anything within the scope of the first one, whether in fact it was considered therein or not. Likewise, where an issue as to a cause of divorce is determined in a maintenance suit, it cannot be relitigated in a subsequent action for divorce. Thus, where, in an action by a wife for a divorce on the ground of cruelty because of her husband's alleged intimacy with another woman, the court finds the alleged charge to be untrue and gives judgment against her, such judgment is res judicata and bars her from pleading the same alleged misconduct in justification of her abandonment of her husband, in his subsequent action for divorce on the ground of desertion. (*Civille* v. *Civille*, 22 Cal.App. 707 [136 P. 503].) . . . Whether or not such prior judgment constitutes a bar to a subsequent suit does not depend on the difference in relief sought in the two actions, but upon the question whether the same matter put in issue in the second suit between the same parties was actually in issue in the first and adjudicated." (9 Cal.Jur. § 104, p. 751, and cases there cited.)

In *Minnich* v. *Minnich*, 127 Cal.App. 1, 5 [15 P.2d 804], it is stated: "The defense of *res judicata* was alleged in the answer to the complaint in appellant's action for separate maintenance, but upon her motion was stricken therefrom. The former judgment was, however, admitted in evidence in respondent's action for divorce on the ground of desertion, and averred acts of cruelty by respondent as justification for

leaving him. The alleged acts occurred before the entry of the judgment mentioned which determined these allegations to be untrue. Such an adjudication was conclusive between the parties when the same facts came again in issue although the same was not pleaded. [Citing authorities.]''

Respondent argues that since the parties were still married after the entry of the judgment in the first action, the trial court herein ''drew an inference from the testimony that some of the acts of cruelty occurred'' after the complaint in the first case was filed and after the rendition of the judgment therein; hence such acts were not within the issues of the former case.

In this regard, mention is made (1) of the act of appellant locking respondent out of the home on March 6, 1944 (during the pendency of the first action), as to which the pleadings and findings in the first action are silent; (2) as to the alleged intoxication of appellant regarding which respondent testified that this occurred on November 23, 1943, and on sundry occasions; that this testimony was corroborated by respondent's mother, who, in answer to the question, ''During the time they were married can you tell us about how many times you saw him under the influence of liquor?'', testified, ''No, I couldn't, Miss Gilmore, but a great many.''

Respondent testified that several months after she left the family home she returned ''to get the baby's crib, and the lock had been changed''; that thereafter she had a conversation with appellant with respect thereto, and ''asked him if I could have a key so I could get the crib. He said, 'No, ma'am, if you want anything, ask me, and I will leave it in the garage for you' ''; that she made no further attempt to get into the home. On cross-examination, respondent testified that she was in the Conciliation Court on May 23, 1944; that the appellant asked her to come back to him. In answer to the question, ''So his locking you out wasn't any part of your remaining away from him?'', she replied, ''No, it wasn't.'' With respect to her allegation in her answer to the complaint herein that ''all the facts were not placed before the Court'' in the first action, respondent was asked: ''What is it that was not before the Court? Before Judge Willis. A. Well, the fact that I said I was going to get a divorce when I left him. That wasn't brought out. Q. Is that the only fact? A. I can't recall them all right now. Q. Can you recall anything that you omitted to place before Judge Willis? A. I don't believe I

can. . . . Q. In everything you have testified so far, you testified to in Judge Willis' court, didn't you? A. Not that I recall, everything. Q. Well, what didn't you? . . . A. Let it go that I testified to the same thing in Judge Willis' court. Q. That you have testified to here? A. Yes.''

Except for the episode of the changed lock, which occurred during the pendency of the first action, the testimony adduced at the instant trial, when any dates were mentioned at all, referred to the married life of the parties prior to the rendition of the judgment in the first action. While it is true that some of the witnesses testifying on behalf of respondent were uncertain as to how many times and upon what dates they observed appellant under the influence of liquor, stating that ''it was a great many times,'' and ''on sundry occasions,'' such evidence is not sufficient upon which to base an inference that such acts occurred after the judgment in the first case was rendered and therefore not adjudicated thereby.

A careful examination of the record before this court discloses that the acts of cruelty alleged in the cross-complaint and testified to at the trial were adjudicated in the first action, and that appellant's defense of res judicata should have been sustained.

For the reasons stated, the judgment is reversed.

Doran, J., and White, J., concurred.