[Civ. No. 19639. First Dist., Div. One. May 21, 1962.]

PAUL VERDIER, Plaintiff and Appellant, v. ALEXAN-DRINE VERDIER, Defendant and Respondent.

[Civ. No. 19941. First Dist., Div. One. May 21, 1962.]

PAUL VERDIER, Petitioner, v. THE SUPERIOR COURT OF SANTA CLARA COUNTY et al., Respondents; ALEXANDRINE VERDIER, Real Party in Interest.

Campbell, Custer, Warburton & Britton, Frank L. Custer, Eisner & Titchell and Haskell Titchell for Plaintiff and Appellant, and Petitioner.

Rankin, Oneal, Luckhardt & Center, Heller, Ehrmann, White & McAuliffe, F. Whitney Tenny, John D. Martin and Edward J. Niland for Defendant and Respondent, and Real Party in Interest.

No appearance for Respondents in Civ. No. 19941.

TOBRINER, J.—This case presents the procedural issue of the appealability of six orders as well as the substantive issue of the validity of the issuance of a temporary injunction. We shall set forth the reasons for our conclusion that the orders relating to a judgment denying divorce cannot properly be appealed because such appeals are premature; on the other hand, the orders relating to the issuance of the injunction are appealable. We do not think, however, that the injunction may be sustained upon the asserted ground that it prevented the pursuit of a multiplicity of actions. It prohibited appellant from prosecuting his pending action, filed in France, based upon a cause of action for divorce for adultery, in the face of the judgment denying divorce rendered in appellant's California action, premised upon a cause of action for divorce for cruelty. As we shall develop, we do not believe the doctrine of multiplicity of actions applicable since, first, the California action had not been settled or adjudicated, and second, even if it had been, it pertained to a different cause of action than that involved in the French action. We cannot believe appellant's attempt to adjudicate his case in two jurisdictions should in some strange manner deprive him of both.

The appellant husband appealed from six orders[1] of the trial court entered in a proceeding for divorce which appel-

---

[1] The six orders are:
1. "Order for Entry of Judgment Denying Divorce," dated June 4, 1959.
2. "Order Correcting Record," dated June 4, 1959.
3. "Order Denying Motions to Vacate and Set Aside Dismissal and to Vacate and Set Aside the Judgment Entered Thereon," dated August 11, 1959.
4. "Order Denying Motion to Vacate and Set Aside Judgment," dated August 11, 1959.
5. "Order for Preliminary Injunction," dated June 3, 1959.
6. "Order Denying Motions to Vacate Order for Preliminary Injunction or Alternatively to Strike Portions Thereof," dated August 11, 1959.

lant, on September 13, 1956, instituted against his respondent wife. Appellant has also filed a petition for a writ of certiorari to review the holding of the court that appellant was in contempt because of his continued prosecution of the French action in violation of the restraining order and temporary injunction.

The appealed orders fall into two categories. The first group consists of four orders which relate to entry by the court of a judgment denying divorce. Appellant admits that one of these orders, an "Order Correcting Record," is nonappealable; the appeals from the other three orders, as we shall see *infra,* are premature.

The second category, comprising the remaining two orders, includes an order for preliminary injunction restraining appellant from instituting or pursuing any divorce proceeding in any other state or country, and an order denying appellant's motion to vacate the injunction. As we shall show, we believe the order for preliminary injunction was appealable but that the trial court erred in granting the injunction. For the same reasons the temporary restraining order, entered March 12, 1958, cannot support a contempt order. As a consequence, the court's denial of appellant's motion to vacate the preliminary injunction does not call for our consideration. Finally, the contempt order, which resulted from appellant's failure to comply with the preliminary injunction and the restraining order must likewise fail.

The controversy here develops from the legal entanglements of two divorce actions, one brought in the courts of France and the other in the courts of California. The parties themselves have also frequented both jurisdictions. They were married in Paris, France, in 1918, and later they moved to California. In 1941 they separated. During the intervening period they each on numerous occasions visited Paris.

In 1952 appellant brought the first action for divorce, based upon a cause of action for adultery, which he filed in Paris, France. Approximately four years later, on August 29, 1956, appellant "disturbed by the lack of progress in the French proceeding," attempted to dismiss it. He then, on September 13, 1956, brought his second action, in California, premised upon extreme cruelty. Originally filed in the City and County of San Francisco, the suit was transferred to Santa Clara County as the place of proper venue.

Appellant's attempt to dismiss the French action engendered a whole series of legal maneuvers but his effort appar-

ently did not accomplish its purpose. To oppose his move respondent filed an affidavit dated November 15, 1956, setting out her "Refusal of Desistment" in the French action. The record shows that the French courts nevertheless proceeded with the action; we set out in more detail in a separate section *infra* the steps in that litigation.

Meanwhile, during the course of the French proceedings, respondent manifested her own demands in the California action. On March 18, 1957, respondent filed her answer and cross-complaint for separate maintenance on the grounds of cruelty, failure to support, and desertion, seeking the following relief: (1) that all of the community property be awarded to respondent; (2) that the court enjoin appellant and certain cross-defendants from disposing of or encumbering the community property and that a trust be imposed as to the community property to the extent of the value of funds misappropriated by appellant and that a lien in such amount be imposed upon his separate property; (3) that a receiver be appointed to take control and custody of all of the community property; (4) that appellant be required to pay support, maintenance and litigation expenses, including counsel fees, to respondent.

A few days prior to the filing of the answer and cross-complaint, the court, on March 14, 1957, ordered appellant to pay to his wife monthly support and maintenance pendente lite and specific sums on account of her counsel fees and costs. The court issued two orders to show cause why appellant should not be held in contempt for violation of this support order, the first such order having been rendered on November 29, 1957, the second, on March 12, 1958. The latter also required appellant to show cause why he should not be enjoined from further prosecution of the French proceedings; the court, on the same day, temporarily restrained appellant from so doing.

From March 12, 1958, to February 18, 1959, the litigants engaged in more than 20 hearings concerning the orders to show cause and various motions urged in the course of them. During this time the court continued in force the temporary restraining order.

The procedural parrying of the parties entered into a final phase, so far as we are concerned, when appellant moved the court for an order dismissing the case without prejudice. Respondent opposed the motion upon the ground that section 581 of the Code of Civil Procedure prevented such dismissal,

but before the court had an opportunity to rule upon the matter, appellant, on January 28, 1959, filed a "Dismissal With Prejudice." This document stated that appellant "hereby dismisses with prejudice the specific cause of action for divorce set forth in his complaint on file herein, but expressly reserves to himself the right to prosecute any and all other causes of action for divorce he may have against defendant, Alexandrine Verdier, including, but not limited to those causes of action for divorce set forth in the action now pending before the Third Chamber of the Civil Court of the Seine, Paris, France."

Striking appellant's stated qualification of the dismissal among other matters, the trial court rendered the following orders: First, an "Order Correcting Record," in which the court struck appellant's attempted limitation of the dismissal, so that the dismissal, as amended, reads, " 'Paul Verdier, the plaintiff above named, hereby dismisses with prejudice the cause of action for divorce.' " The court entered the order *nunc pro tunc* as of January 28, 1959, the date of the filing of the dismissal. Second, an "Order for Entry of Judgment Denying Divorce," which is, in substance, a judgment. In the judgment the court stated, "as of the 28th day of January, 1959, and at all times prior thereto, no fact, matter or cause exists, or has existed, which constituted any ground or grounds for divorce in favor of plaintiff . . . against defendant. . . ." Third, an order for issuance of a preliminary injunction, dated June 3, 1959, enjoining appellant and other persons from taking any part in any other divorce proceeding against respondent, in France or elsewhere, including taking any further step in any appeal.

The order for preliminary injunction rested upon the recitations that after the order of the court to pay alimony appellant "undertook to reestablish a proceeding in the nature of an action for divorce against his said wife in the courts of the Republic of France, which proceeding is now pending before the Third Chamber of the Civil Court Of The Seine at Paris, in the Republic of France"; that despite the order of the court of March 15, 1958, restraining appellant from prosecuting the French action, appellant "continued to maintain and prosecute said action" in the courts of France; "that no court in the Republic of France or in any other jurisdiction but the State of California has jurisdiction to adjudicate the marital status" of the parties; that appellant had filed his " 'Dismissal with Prejudice' " and

"that no cause of action for divorce" in favor of appellant "existed on the 28th day of January, 1959, or at any time prior thereto" and that respondent was entitled to an injunction since the prosecution of other actions would tend "to render the judgment of this Court ineffectual, and . . . result in a multiplicity of judicial proceedings. . . ."

Appellant then sought to induce the court to rescind these adverse orders. On July 27, 1959, appellant moved to vacate and set aside the judgment pursuant to the provisions of section 663 of the Code of Civil Procedure. On July 27, 1959, appellant also moved, pursuant to section 473 of the Code of Civil Procedure, to vacate the dismissal and the judgment entered thereon on the grounds of mistake, inadvertence and surprise of appellant. Finally appellant moved to vacate the order for preliminary injunction. The trial court denied the three motions on August 11, 1959. Appellant appeals from all six of the above orders.

Appellant presents another matter for this court's determination. On April 21, 1961, the superior court adjudged appellant in contempt upon the ground that in prosecuting the French action he had violated its restraining order of March 12, 1958, and its preliminary injunction of June 3, 1959. The superior court held appellant's contempt to be of a continuing nature, decreeing that appellant remain in contempt until "the decree of divorce which is obtained in the Courts of France has been set aside; . . ." The court fined appellant $500, observing that it "would also adjudge an imprisonment were it not for his [appellant's] advanced age and state of health." We granted appellant's petition for a writ of certiorari to review the order of contempt, and the writ has been set for determination with this appeal.

We must decide three basic issues: First, the appealability of the orders relating to the judgment of divorce and of the order for preliminary injunction; second, the validity of the order granting the preliminary injunction, and, third, the validity of the trial court's ruling that the dismissal barred any further prosecution of an action for divorce by appellant.

 We believe the appeals relating to the judgment denying divorce are premature. Respondent, by way of cross-complaint, seeks certain affirmative relief with respect to the community property which the trial court has yet to decide. As Mr. Justice pro tempore Warne states in *Crocker-Anglo Nat. Bank* v. *Kuchman* (1961) 194 Cal.App.2d 589, 591 [15 Cal.Rptr. 230], in passing upon a situation in which

the trial court dismissed plaintiffs' second cause of action and entered a nonsuit, leaving as still pending defendants' cross-complaint and plaintiffs' answer to the cross-complaint "We have concluded that this appeal is premature because the cross-complaint and the answer thereto are still pending and a final judgment has not been entered in the cause." The court explains the basis of its ruling: "Under the California procedure there is ordinarily only one final judgment, and in an action like the present one where the cross-complaint has been filed and the matter stated therein put in issue there is nothing that permits the rendition of two separate judgments where the parties to the complaint and the cross-complaint and the transaction out of which the action arose are identical. A cross-complaint is not sufficiently independent to allow a final judgment, unless the judgment may be considered final as to some of the parties. [Citations.]" (Pp. 591-592.) ■■■ The court concludes: "A final judgment may not be entered until the issues raised by the cross-complaint and the answer thereto have been determined." (P. 592.) (See also: *Nicholson* v. *Henderson* (1944) 25 Cal.2d 375, 381 [153 P.2d 945] (appeal from order of nonsuit as to cross-complaint) ; *Merchants Nat. Bank* v. *Clark-Parker Co.* (1929) 97 Cal.App. 757 [276 P. 387] (appeal from order striking counterclaim) ; *Krug* v. *Meehan* (1951) 106 Cal. App.2d 554 [235 P.2d 410] (appeal from order dismissing complaint, after demurrer sustained, while cross-complaint still pending).) ■■■ The appeals from the orders relating to the judgment denying divorce must be dismissed as premature.

We turn next to the appeal from the preliminary injunction. No question arises as to the appealability of the order itself (Code Civ. Proc., § 963, subd. 2; *Brydon* v. *City of Hermosa Beach* (1928) 93 Cal.App. 615, 620 [270 P. 255]), but respondent urges that appellant's notice of appeal from the order was not timely filed. We shall explain why we have concluded that respondent's contention arises from a misinterpretation of the Rules on Appeal.

Rule 2(a) requires that notice of appeal must be filed within 60 days of entry of judgment, "unless the time is extended as provided in Rule 3." Rule 3(b) provides, "When a *motion to vacate* a judgment . . . is made by any party on any ground within 60 days after entry of judgment, (1) if the motion is denied . . . within 120 days after entry of the judgment, the time for filing the notice of appeal from the

judgment is extended for all parties until 30 days after entry of the order denying the motion to vacate. . . ." (Emphasis added.)

 Respondent contends that, since rule 3(b) refers only to "motion[s] to vacate a *judgment*," (emphasis added) the rule does not extend the time within which appellant may file notice of appeal from an *order*. Rule 40 (Definitions), however, provides: "In these rules, unless the context or subject matter otherwise requires: . . . (g) 'Judgment' includes any judgment, *order* or decree from which an appeal lies." (Emphasis added.) As a consequence rule 3(b), which extends time for the filing of notice of appeal, applies to the filing of notice of appeal from an order issuing an injunction.

Appellant met the requirements as to the time for filing. The court entered the order for preliminary injunction on June 3, 1959. The court's order, dated August 11, 1959, denying the motion, states that the motion was argued on July 27, 1959, within the 60-day time limit. Appellant filed notice of appeal from the order issuing the preliminary injunction on September 1, 1959, within 30 days of denial of the motion, as required under rule 3(b).

 Our task leads us next to an examination of the legality of the preliminary injunction; we must determine the validity of the trial court's position that since appellant entered a dismissal with prejudice, appellant could not prosecute any cause of action which arose prior to the date of the court's order; that the pursuit of the foreign action produced a multiplicity of actions and rendered the order ineffectual. We must decide if the injunction escapes the prohibition of section 526 of the Code of Civil Procedure against enjoining an action pending at the commencement of the action in which the injunction is sought *except* to prevent a multiplicity of proceedings.

As to this last issue we shall point out that the French action was pending at the commencement of the instant action; that in order to invoke the doctrine of multiplicity of actions the California action must have been settled and finally adjudicated. We shall explain why we have concluded that the instant case does not meet this test: first, the action was not settled and finally adjudicated; second, even assuming such settlement and adjudication of the California cause, such cause was not the same as that presented in the pending French action.

The record sufficiently shows that the French action was pending at the commencement of the present action. The French action long predated the California suit: the French action was filed on March 14, 1952, and the California complaint filed on September 13, 1956. Consequently the French action must have been pending as of the date of the commencement of the California action unless it had been dismissed.

While appellant apparently filed a request for dismissal on August 29, 1956, the French law does not permit dismissal of an action without the consent of the defendant. Respondent (defendant) filed her "Refusal of Desistment" dated November 15, 1956. In that document she said that she had "the greatest interest in having French courts adjudicate the divorce case such as it has been introduced before them" and that appellant who had maintained "that French courts are the only ones which are competent to try the divorce case introduced by him . . . comes now to desist himself of a case which is actually submitted to the Court of Cassation in order to introduce the same action before American Courts, a case which may presently have already been introduced." The document shows upon its face that the French action still existed; that the matter was pending in France, and that respondent objected to any possible dismissal.

Indeed, on July 10, 1957, the Court of Cassation rejected respondent's appeal filed against the decree rendered in favor of appellant on March 12, 1956, by the Court of Appeals of Paris. Finally the Appellate Court of the Department of the Seine, sitting in session at the Palace of Justice in Paris, France, "rendered judgment," the transcript of which judgment was "filed in Paris (2d Civil Department) the 19th of June, 1959." The document states: "[I]n view of the decree of the 30th of October, 1952[2] . . . In view of the judgment of the 11th of February, 1954[3] . . . In view of the decree of the 12th of March, 1956,[4] and . . . In view of the decree of the Supreme Court (Court de Cassation) of the 10th of July, 1957," the court "REJECTS as unfounded the objection of pendency in another Court, raised by Mrs. ZINS VERDIER"

[2]The decree of October 30, 1952, as described in the decision of the Court of Cassation of July 10, 1957, upheld the competency of the tribunal as to the residence of the spouses.

[3]The judgment of the French court dated February 11, 1954, held that respondent was residing both in Paris and in San Francisco.

[4]The decision of the Court of Appeals of Paris dated March 12, 1956, found that respondent maintained a French residence.

and "PRONOUNCES the divorce between the spouses VERDIER ZINS at the request and in favor of the husband, for adultery, with all legal consequences."

This history of the French proceedings records the continuity of an action filed in 1952 to its ultimate outcome in 1959. We cannot accept respondent's intimation that the action had been dismissed and was reestablished in the absence of any showing to that effect and particularly in view of the fact that the burden lay upon respondent to make such a showing. (27A C.J.S. § 174(3), pp. 734, 736.) While respondent contends that her signature to the refusal of desistment occurred when her attorney was not present, and that she did not understand it, we cannot now disregard it upon these vague grounds, particularly since the French courts have obviously accepted jurisdiction throughout this period. Indeed, respondent's participation in the French action is presently incompatible with her contention that the French court lacked jurisdiction. Finally, respondent's allegation in her answer and cross-complaint of March 18, 1957, that the "prior action filed in France by plaintiff . . . has ever since been, and now still is pending and entirely undisposed of" is inconsistent with the position that the French action was not pending at the commencement of the California litigation.

Nor can we accept the position of the trial court that the French courts did not "have the required jurisdiction of the parties to determine their marital status" and that consequently the foreign action could not be pending at the commencement of the California suit. Preliminarily, we doubt that an asserted lack of jurisdiction would necessarily destroy the actual pendency of the foreign action. But more fundamentally the trial court posits its conclusion upon the fact that "[t]he maintaining of an action for divorce in California requires residence in California for a period of at least one year immediately preceding the filing of the action" and that we must presume "the laws of France are the same." Yet as Justice Traynor states in a concurring opinion in *Scott* v. *Scott* (1958) 51 Cal.2d 249, 255 [331 P.2d 641] : "This court has never expressly ruled on the question whether a finding of domicile is prerequisite to the recognition in this state of a divorce decree rendered abroad." (Footnote omitted.) As Justice Traynor explains, in the absence of a showing that the "recognition of the foreign decree would violate due process limitations or established local policy," the California courts uphold "a decree of divorce that is valid according to the

laws of the foreign country. . . ." (P. 256.) He concludes: "There is no reason to read any requirement of domicile or bona fide residence into the statute. . . . The valid judgments of courts of other countries should therefore be respected unless they run counter to local policy." (P. 256.)

We find no showing which would sustain a ruling that the French action was not pending at the date of the commencement of the California action.

As we have stated *supra,* we do not believe that the California action meets the requirement implicit in the doctrine against multiplicity of actions that the proceedings in which the injunction issues must have been settled.[5] ▆▆ The rule is stated by *Bartholomew* v. *Bartholomew* (1942) 56 Cal. App.2d 216, 225 [132 P.2d 297]: "There are two general classes of cases in which injunctions are issued to prevent a multiplicity of actions, namely, those in which many claims which have not been adjudicated are brought into equity to be made the subject of a single trial and decree, as was done in *Southern Pacific Co.* v. *Robinson* (1901) 132 Cal. 408 [64 P. 572, 12 L.R.A. N.S. 497], and *Atchison etc. Ry. Co.* v. *Smith* (1919) 42 Cal.App. 555 [183 P. 824], and those that are enjoined because they are shown to be vexatious suits upon causes of action that *have been settled by former adjudication.*" (Emphasis added.) ▆▆ Our case does not fall within the first class; it must meet the requisite of the second class that there be a former adjudication.

We cannot isolate the judgment of dismissal with prejudice from its origin; to hold the judgment a final adjudication and to ignore the circumstances of its genesis would be forced and artificial. The judgment did not emanate from a trial upon the issues. It did not follow appellant's presentation of

---

[5]While courts of equity possess the inherent power to restrain persons from prosecuting a foreign divorce action (see 54 A.L.R.2d 1240; 128 A.L.R. 1467), the codes regulate the exercise of such power. As the court in *Spreckels* v. *Hawaiian Commercial etc. Co.* (1897) 117 Cal. 377, 378 [49 P. 353], states: "The courts of this state have the same power to restrain persons within the state from prosecuting actions in either domestic or foreign jurisdictions which courts of equity have elsewhere. *The code, however, has regulated the exercise of the power, and prescribed the conditions which entitle litigants to the preventive writ.*" (Emphasis added.) (See also: *Wright* v. *Superior Court* (1903) 139 Cal. 469, 473 [73 P. 145].) We must therefore look to the codes for a definition of the conditions which entitle appellant to his sought relief. Section 3423 of the Civil Code states that "An injunction cannot be granted: First—To stay a judicial proceeding pending at the commencement of the action in which the injunction is demanded, unless such restraint is necessary to prevent a multiplicity of such proceedings." (See also: Code Civ. Proc., § 526.)

his case. On the contrary, as we shall set forth, it stemmed from appellant's attempted withdrawal of his case from the jurisdiction in order that appellant could proceed to prosecute his litigation in France. Further, the California adjudication was not final; appellant has appealed the judgment, and the appeal has not been determined.

Appellant attempted to dismiss with prejudice ''the specific cause of action for divorce set forth in his complaint'' but to reserve ''those causes of action'' pending in the foreign action. On the one hand, if the court erred in giving appellant's limited dismissal the sweep of a full dismissal with prejudice of all causes and in striking its declared purpose to preserve the foreign cause, and if the dismissal should have been limited to appellant's design, it would not have served as a final adjudication. A dismissal which by its terms negatives a decision of the case on its merits does not meet the requirement for the application of res judicata to a divorce proceeding that the decision be on the merits. (*Mahaffa* v. *Mahaffa* (1941) 230 Iowa 679 [298 N.W. 916]; *La Vigne* v. *La Vigne* (1957) 336 Mass. 377 [145 N.E.2d 687]; 27A C.J.S., § 174(4), pp. 739, 740.)

On the other hand, if the court correctly held appellant's dismissal to be ''equivalent to a judgment on the merits,'' we must observe that, pursuant to section 473 of the Code of Civil Procedure, appellant asked to be relieved from the ruling; appellant claimed that if the dismissal legally withdrew all causes, he had mistaken the law and sought relief from such an error. The court denied such relief; appellant has appealed from the order of denial; the appeal, while premature at the present instance, can be filed upon the conclusion of the case and must then be determined. We cannot say, at this preliminary stage, especially in light of the decision in *Security Truck Line* v. *City of Monterey* (1953) 117 Cal.App.2d 441, 445 [256 P.2d 366, 257 P.2d 755], that appellant's request was properly denied.

As we have previously set out, appellant has appealed four orders relating to the denial of the divorce. We have held one order to be nonappealable and the remaining three appeals to be premature because the issues raised by respondent's cross-complaint are still pending. While we do not, of course, pass on the merits of these appeals, appellant may file such appeals upon the rendition of judgment on the cross-complaint. In view of this record any ruling that the case had been finally adjudicated would at best be unrealistic. If we

may borrow the terms of the New York Supreme Court in passing upon somewhat different but possibly comparable facts, "It would be anomalous" to apply the rule of res judicata "and in due course have an appellate determination which reversed the judgment. . . ." (*Koff* v. *Koff* (1956) 150 N.Y.S. 2d 302, 304.)

The "Order for Preliminary Injunction" itself recites that respondent "is entitled to an injunction pendente lite"; that the acts of appellant "during the pendency of this action would produce irreparable damage"; the injunction restrains appellant "during the pendency of this action, or until the final determination thereof. . . ." Is this order compatible with a final adjudication and determination of the matter? The very terms of the order disclose that no judgment has been rendered which concludes this case.

In brief we are confronted with a ruling that appellant's efforts to present his case in France have by some legal alchemy solidified into a judgment that he cannot pursue his case in California and into an injunction that he cannot pursue his case in France. The injunction may, indeed, forever preclude his prosecution of the French cause, because, if the California case is ultimately reversed, at that point appellant may be precluded from prosecuting the pending French action or any other foreign cause. We must conclude that the substance of the alleged California adjudication dissolves into its diverse and unfinished ingredients; we have no fixed settlement of issues here but fluid, undetermined litigation. Thus we do not pass upon the question whether a judgment is final in a case in which, after a hearing, a judgment has been issued and an appeal taken. We pass upon an extraordinary record, which presents no final adjudication and leaves untied the strings of many unresolved questions.

We believe that the injunction fails, not only because the California case has not been adjudicated, but also for the separate and independent reason that, even assuming such adjudication, the California case presented a different cause of action than the French suit. The California case rested upon extreme cruelty; the foreign action was founded upon various acts of adultery, dating back to 1919, which predate the California action by a period greater than the statute of limitations. We shall point out that respondent's position that the French action must have been adjudicated by the California action, because appellant could bring only one

action for divorce, cannot stand. This concept confuses the sought relief with the primary right which constitutes the cause of action.

The determination of this question inherently turns upon the nature of a cause of action. As Witkin points out (2 Witkin, Cal. Procedure, p. 982 et seq.), a cause of action in California involves the invasion of a primary right of the plaintiff; more exactly, the cause of action congeals in the *facts* which represent the invasion of plaintiff's primary right and defendant's corresponding breach of duty. The cause of action lies neither in the relief or remedy sought nor in the particular legal theory urged in support of the wrongfulness of the act. The right is not the right to procure a *divorce,* which pertains merely to the remedy; other remedies, such as the right to separation, to maintenance, etc., may accrue from the same misconduct. The primary right consists of the right not to be subjected to extreme cruelty, not to be deserted by one's spouse, not to have one's spouse engage in adulterous conduct, and the like. Presumably facts involving a violation of each of these rights may form a separate cause of action.

Section 74d of the Restatement of the Law of Judgments specifically applies the principle to divorce actions, saying that, "where the plaintiff is unsuccessful in obtaining a divorce on a specified ground, the judgment does not preclude him from maintaining another action for divorce on other grounds, even though they existed and were known to him prior to the beginning of the first action. The judgment will, however, bar him from maintaining a subsequent action on the ground specified in the first action."[6] Naturally, if the grounds for the second action involve facts which could have been urged to support the first action, then such facts may not be relitigated; such second action would be barred either on

<hr/>

[6] 27A C.J.S. § 174(2), pp. 729, 730, states: "Ordinarily, when a judgment on merits is rendered in favor of a defendant, plaintiff is prevented by principle of res judicata from subsequently bringing suit on same cause of action although he presents a ground for relief asked additional to those stated in original action, but this rule does not apply to an action for divorce, with the result that where plaintiff is unsuccessful in obtaining a divorce on a specified ground, judgment does not preclude him from maintaining another action for divorce on other grounds, even though they existed and were known to him prior to bringing of first action." As the Florida Supreme Court stated in *Prall* v. *Prall* (1909) 58 Fla. 496 [50 So. 867, 871, 26 L.R.A. N.S. 577], "While the welfare of society demands exemption from unnecessary and vexatious divorce litigation, the principles of res adjudicata should not be so applied as to prevent one determination of every distinct cause of action under the statutes authorizing divorces for specific and separate species of misconduct."

the ground that it is res judicata or on the basis that plaintiff seeks to split a cause of action.

The California case of *Jordan* v. *Jordan* (1954) 129 Cal. App.2d 309 [276 P.2d 818], recognizes the separateness of adjudication as to different causes of action. Although in that case the second cause rested ''upon a different cause of action which had not accrued as a ground for a divorce when the prior divorce action was tried'' (p. 311), the court states the rule in its full breadth, saying: ''The doctrine of res judicata has a double aspect. 'A former judgment operates as a bar against a second action upon the same cause, but in a later action upon a different claim or cause of action, it operates as an estoppel or conclusive adjudication as to such issues in the second action as were *actually* litigated and determined in the first action.' (Emphasis added.)'' (P. 310.) The court likewise alludes to and relies upon a Connecticut case, *Morris* v. *Morris* (1945) 132 Conn. 188 [43 A.2d 463], in which the second cause depended upon facts which must have been in existence as of the date of the first cause. The court states: ''There both parties sought a divorce on the ground of cruelty. Each was denied a decree. Less than a month thereafter the wife brought an action for support on the theory of desertion. She was permitted to maintain it notwithstanding the prior divorce decree for the reason that the issues were not the same in the two cases.'' (P. 312.)

Other California cases have recognized the principle of the separability of causes of action for divorce. Thus in *Haskell* v. *Haskell* (1880) 54 Cal. 262, 263, the court states ''That adultery or habitual intemperance would in a popular sense constitute extreme cruelty, we do not question. And so would willful desertion or willful neglect. But, in a legal sense, extreme cruelty is something different from any of the other causes of divorce, and constitutes a separate and distinct cause of action.''

In *Krzepicki* v. *Krzepicki* (1914) 167 Cal. 449 [140 P. 13] a plaintiff who was denied a limited divorce in New York in April 1910 later instituted an action in California alleging her husband's desertion of her in Poland in 1898. The defendant husband's plea of the New York action as a bar won the approval of the trial court. In affirming the trial court, the Supreme Court did not readily dispose of the case upon the *a priori* proposition that the New York judgment was res judicata on all issues, but carefully examined the record to determine whether or not plaintiff had actually alleged *both*

desertion and neglect in the New York action and that the New York court had indeed tried the issue of willful neglect. The court held that the New York suit constituted a bar because "a cause of action between parties can be litigated to judgment but once, and when a subsequent suit is brought for identically or substantially the same cause of action that was set up and litigated in the former suit such former judgment is a bar." (P. 453.) According to the Supreme Court the issue turned not on the difference in relief sought in the actions but upon whether the "same matter" was put in issue between the parties. (P. 454.) The court concludes: "As, however, this very same matter of willful neglect was the subject of judicial controversy in the former action and judicially determined against plaintiff she will not be permitted to relitigate it, and within the rule announced such former judgment constitutes a bar and the trial court properly so held." (P. 454.)

*Wulfjen* v. *Dolton* (1944) 24 Cal.2d 891 [151 P.2d 846] holds that "The violation of *one primary right* constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other." (Pp. 895-896.) While one cause of action may give rise to more than one form of relief, as in the cited case, so also, several different causes of action may give rise to identical relief, as in the instant case. As the court points out, if a party fails to prove a claim under one theory, he may not later urge the *same facts* as authorizing recovery under *another legal theory* in a subsequent action. Here we see, dramatically, rejection by the Supreme Court of two criteria for identifying a cause of action. The court does not look to the legal theory of the wrong (see *Panos* v. *Great Western Packing Co.* (1943) 21 Cal.2d 636, 638-639 [134 P.2d 242]) nor does it look to the relief sought; instead, it relies upon the primary right of the plaintiff which defendant has invaded.

The *Wulfjen* decision implies that in the area of divorce, as in other fields of law, the cause of action lies not in relief sought, but in the facts composing the violation of the plaintiff's primary right. Since the facts giving rise to the instant action do not necessarily coincide with those giving rise to the action prosecuted in France, no multiplicity of proceedings within the meaning of Civil Code section 3423 resulted; the court lacked the power to issue the instant injunction.

Respondent contends, however, that *Babcock* v. *Babcock*

(1944) 63 Cal.App.2d 94 [146 P.2d 279] stands for the proposition that "a judgment against the plaintiff in a divorce action bars any cause of action for divorce existing when the first action was brought" and that the California Annotations to the Restatement of the Law of Judgments so holds. It is true that the District Court of Appeal in that case did say, "The former judgment is a bar, not a collateral estoppel." (P. 100.) But the record actually discloses a collateral estoppel. The issue arose as to a second and third suit for divorce, the second action, brought in 1930, being based upon cruelty, and the third action, instituted in 1941, resting upon desertion. The court held that since the "ground upon which a divorce is now sought was in existence at the time [of] the second action," the former judgment barred the action. (P. 100.) Yet the ground for the divorce in the third action, desertion, was *litigated* in the second action. As the court said, "In the second suit for divorce the complaint alleged, 'For statistical purposes': '2. Date of separation—Approximately the middle of July, 1928.' *This allegation was denied, but found to be true.*" (P. 100; emphasis added.) In the second suit the court thus found the facts of desertion. Thus the judgment in *Babcock* may accordingly be sustained upon the basis that the issue of desertion was "actually litigated" in the second action and hence supported a collateral estoppel against relitigation in the third suit.

The above analysis of *Babcock* sustains the judgment in that case but avoids the language of the court that "[t]he former judgment is a bar" (p. 100), a holding which conflicts with the Restatement of the Law of Judgments and the distinctions applied in the cases.[7] In any event the facts of the

---

[7]*Pacific Mut. Life Ins. Co.* v. *McConnell* (1955) 44 Cal.2d 715, 724-725 [285 P.2d 636], establishes the difference between the effect of a judgment as a complete bar to a subsequent action and its effect as a collateral estoppel as to issues actually raised. (See also: *Estate of Williams* (1950) 36 Cal.2d 289, 292 [223 P.2d 248, 22 A.L.R.2d 716]; Rest., Judgments, § 68, com. (d), pp. 293, 300.) A judgment may act as a complete bar only in the event the two actions involve the same cause of action. It serves as a collateral estoppel to issues actually litigated in a case involving the identical parties but different causes of action. Respondent and the court in *Babcock* v. *Babcock* (1944) 63 Cal.App.2d 94 [146 P.2d 279], rely upon *Helpling* v. *Helpling* (1920) 50 Cal.App. 676, 681 [195 P. 715], and *Cardinale* v. *Cardinale* (1937) 8 Cal.2d 762, 767 [68 P.2d 351]; yet the issues in those cases did not turn upon whether the factual situations involved separate causes of action but whether the factual situations were the grounds of relitigation of divorce or separate maintenance in separate actions. Although, in *Panos* v. *Great Western Packing Co.* (1943) 21 Cal.2d 636 [134 P.2d 242], cited in *Babcock,* the court

present case do not parallel those of *Babcock*.[8] Here the trial court stated that no other cause of action for divorce existed at the time of the judgment; the court did not find that the facts of the instant case had been previously litigated, either in the California or in the French actions.

We therefore conclude that the trial court had no power to issue the instant injunction. There was no multiplicity of judicial proceedings because the issues in the two actions were not the same, and there was no former adjudication as required by Civil Code section 3423. We need not consider the compelling reasons which suggest that even if it had the power the trial court should not have issued the injunction. We do note, however, that respondent is in no position to complain of the continuance of an action which would no longer be pending had she not prevented its dismissal.

The contempt order must fall with the injunction. We therefore need not consider other questions raised in appellant's petition. Likewise we need not consider the order denying appellant's motion to vacate the preliminary injunction.

By an unusual concatenation of procedures a party should not find himself barred from a forum for an adjudication of his rights. Appellant brought the French action; he later attempted to withdraw it but respondent successfully resisted his effort to do so; appellant brought a second action in California, which he thereafter sought to dismiss. The California court cut through the ambiguous dismissal, gave it a full, if unanticipated scope, entered a judgment denying divorce, and enjoined the prosecution of the French action. Thus appellant's efforts to present his case in two jurisdictions has strangely ousted him from both. Such a court-made bilateral

---

recognized that a cause of action is not determined by the theory of the legal wrong, but by the invasion of a primary right, the court in *Babcock* did not apply that principle.

[8]We note another California case, *Titensor* v. *Titensor* (1946) 75 Cal. App.2d 206 [170 P.2d 479], which seemingly held that a matter litigated in a prior divorce action could not be relitigated in a subsequent one. The court declared: "[A]fter a divorce suit has terminated in favor of either the plaintiff or the defendant, no second suit can be brought to try anew anything within the scope of the first one, whether in fact it was considered therein or not." (P. 209.) The acts of cruelty relied upon in the second suit, however, composed the basis for the first. *Taliaferro* v. *Taliaferro* (1959) 171 Cal.App.2d 1, 5 [339 P.2d 594], points out the limited nature of the ruling: ". . . *Titensor* v. *Titensor* . . . held only that allegations of the same acts in support of a second divorce" as those supporting a previous decree "would be barred as *res judicata*."

bar should not operate to prevent appellant from presenting his case anywhere or at all.

These extended proceedings have stretched to the breaking point the system of settling disputes by the judicial process; instead of resolution, here, we witness the spawning of subsidiary legal controversy which has become self-propagating. Appellant is nevertheless entitled to a hearing of his case. It would be a sad thing, and a failure of the administration of justice, if a complex of legal procedures, such as these, could cost a litigant his forum. We do not believe that they compel such an unsavory result.

We annul the contempt order as to which petitioner sought review by certiorari. We reverse the order issuing the injunction; we dismiss as moot the appeal from the order denying the motion to vacate the injunction. We dismiss the remaining appeals. Costs on appeal are to be borne equally by the parties.

Bray, P. J., and Sullivan, J., concurred.

A petition for a rehearing was denied June 18, 1962, and respondent's petition for a hearing by the Supreme Court was denied July 18, 1962. Tobriner, J., did not participate therein.