[Civ. No. 8629. Fourth Dist., Div. Two. Apr. 12, 1968.]

CHRISTINE DOCKTER, Plaintiff and Appellant, v. CITY OF SANTA ANA, Defendant and Respondent.

Charles Garrity for Plaintiff and Appellant.

Ruston & Nance and Donald A. Ruston for Defendant and Respondent.

McCABE, P. J.—Petitioner noticed her appeal "from that certain order and judgment" of denial on June 6, 1966, and a denial of her motion for reconsideration on September 23, 1966.

On February 9, 1966, petitioner filed with the City of Santa Ana an application for leave to present a late claim. In that application petitioner alleged she had a cause of action for personal injuries which occurred on September 14, 1965, and failure to file within the one hundred-day period was through mistake, inadvertence, and excusable neglect, and the City of Santa Ana was not prejudiced by the delay. Attached to the application was a verified proposed claim alleging: the personal injury occurred on September 14, 1965, while she was attending an adult class given by the City of Santa Ana; she was engaged in using her own knitting machine when a defective table, supplied by the City, broke causing the knitting machine to fall on her leg resulting in injury to it; her general damages were $10,000 and the medical expenses were unascertained.

In a verified declaration, supporting the application and claim of February 9, 1966, petitioner again states the personal injury occurred on September 14, 1965, and further asserts: "On the Thursday, following the accident, declarant telephoned the City Recreation Department, who referred her to the City's Insurance Carrier, Allstate Insurance Company. The manager of the Allstate Insurance Company sent an adjuster to speak with declarant, who said to her, 'Don't worry about anything, we'll take care of everything.' Declarant was not aware of the 100-day statute, and had not consulted an attorney for legal advice . . . Declarant felt that

the insurance carrier . . . would take care of her case, however, she has now learned that she has permanent injury to her left lower extremity, and the insurance company . . . has refused to negotiate further on this matter. . . .''

Petitioner's application to the City for leave to present a late claim was denied on April 9, 1966.

On April 15, 1966, the petition for leave to present a late claim was filed in the superior court with a hearing noticed for April 29, 1966. The hearing dates in the superior court were continued from time to time until June 3, 1966, when the matter was submitted. A minute order of June 6, 1966, denied the petition.

In the interim between April 15 and June 6, petitioner filed two additional and supplemental declarations. In summary, these declarations contain statements conflicting within themselves and with prior declarations. The primary conflicts concern the date of the accident and conversations with various persons. Until the last supplemental declaration which was filed on June 6 (the date of the court's ruling), petitioner maintained the accident occurred on September 14, 1965, however, in the last supplemental declaration which was in the nature of one in opposition to declarations filed by and on behalf of the City, she stated, ''. . . however, after reading Mr. Whitson's declaration, I do believe that the accident probably occurred in October rather than September of 1965.'' By so stating, petitioner could not have called ''the Recreation Department on September 28, 1965'' from the school office or reported the matter to Allstate Insurance Company on or about September 30 and the adjuster could not have come to see petitioner on or about October 1 and she could not have had several conversations with the adjuster from October 1.

For the first time in her petition to the court, petitioner sets forth specifics as to why no claim was filed within the 100-day statutory period. In resume, these consist of statements that Allstate would settle the case upon completion of the medical treatment; the continued inquiry by Allstate representatives as to her medical progress; between December 15 and 20, the Allstate representative upon being informed she would get an attorney, informed her not to get an attorney and he would be in touch with her after the Christmas Holidays; and it was not until about the middle of January 1966 that Allstate informed her it would not pay any money to her. There is no

evidence or declaration as to when medical treatment was terminated.

In declarations in opposition, it appears the first contact by an Allstate representative was on November 1, 1965. On November 9, petitioner informed the representative she had incurred a medical bill of $10 and he attempted to settle the matter for $30, but was informed she would not settle and would not be "intimidated or rushed" by Allstate. Petitioner had been involved in prior litigation and dealings with insurance companies, was experienced in her dealings and had been represented by an attorney in her previous case. "For this reason she knew she did not have to settle, would not settle, and could control the settlement negotiations in her own good time." Another offer to settle was made and refused. The latter offer was for $50. On November 11, the representative again attempted to settle the matter, informed petitioner the medical records did not appear to reveal a serious injury at which time he was informed she was going to retain an attorney, as she had in her automobile accident, and the case was not going to be pushed by the representative since his attempts and the company's attempt to settle the case were "against God's way." She would get an attorney to see the case was settled "in accordance with God's will."

From another opposition declaration, it appears that about November 15 petitioner called the Allstate office and requested a particular representative not contact her again. The only other contact with the declarant, Mr. Leeper, of Allstate, was in mid-March or early April 1966 in which petitioner sought to negotiate a settlement at which time she was informed there was no liability and the statute of limitations had run on this claim.

Another declarant in opposition, Mr. Earwicker, a supervisor for Allstate, first contacted petitioner at her apartment on December 10, 1965, to discuss her physical condition and determine if there were additional bills. On this contact for the first time Allstate learned petitioner claimed damage to her knitting machine and would, as to it, only settle for a new machine, although there was no evidence of damage, repair bill or whether it could be repaired. On December 17, in a telephonic conversation, petitioner informed Mr. Earwicker she had not seen a doctor again, nor obtained an estimate of damage to her knitting machine, but she would obtain estimates. On December 21, Mr. Earwicker contacted petitioner at her apartment and learned she had no verification of damage

to the machine. He informed petitioner at that time no further consideration would be given to her matter until there was indication she was still being treated, and a verification of machine damage had been received and until Allstate had an indication from her as to a settlement amount. There were no further contacts or communication by anyone from Allstate with petitioner from December 21, 1965 until January 21, 1966, when petitioner talked to Mr. Earwicker by telephone. At that time he informed her Allstate having received nothing from her was not considering, and would not consider, her claim because no liability existed.

An opposing declaration of the attorney, representing the City, declared petitioner's signed statement establishes the accident occurred on October 14, 1965, and, basing his conclusion on this date, the 100 days to file a claim would terminate on January 22, 1966.

The order denying the petition was made on June 6, 1966, and entered on June 9, 1966. Respondent City served notice on petitioner on August 18, 1966, that the court on June 6, 1966, had denied the petition. On August 29, 1966, petitioner filed a motion for reconsideration which motion was heard on September 16, 1966, and ordered denied on September 23 but entered on September 27, 1966. The notice of appeal filed October 26, 1966, encompassed both the order made on June 6 and the order made on September 23.

The petition to the superior court was entitled a "Petition for Leave to Present a Late Claim (Section 912 of the Government Code)." This section was repealed in 1965 which repeal was effective before the accident here in question (Stats. 1965, ch. 653, § 5, p. 2011). However in the same year, Government Code, section 946.6, was enacted and this section provides for the filing of a petition in the proper court to be relieved from the effects of Government Code, section 911.6. In the case at bench, petitioner's application had been denied by the governing body and a petition to the superior court filed within the statutory time.

Section 946.6, *supra,* provides in part that the petition to the court must show the reason for failure to present the claim within the time limit specified in Government Code, section 911.2. Additionally, section 946.6, *supra,* states in part:

"(c) The court shall relieve the petitioner from the provisions of Section 945.4 if the court finds that . . .

"(1) The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect . . .

"(e) The court shall make an independent determination upon the petition. The determination shall be made upon the basis of the petition, any affidavits in support of or in opposition to the petition, and any additional evidence received at the hearing on the petition."

Since section 946.6, *supra,* was in effect at the time of the accident and subsequent thereto and is applicable to the facts herein involved, we will consider the petition as having been filed under section 946.6, *supra,* instead of section 912.

▬ Relying upon rule 2, Rules of Court, it is defendant's position that the notice of appeal from the June 6 order, filed on October 26, was filed too late. This contention would have validity were it not for rule 3, Rules of Court.

Rule 2, *supra,* provides that a notice of appeal must be filed within 60 days after the date of mailing notice of the entry of judgment by the clerk of the court or within 60 days after the date of service of written notice of entry of judgment by any party unless the time is extended by rule 3, Rules of Court. The record does not reflect a notice was given by the clerk.

Rule 3, *supra,* so far as applicable to the case at bench, provides that if a valid notice of intention to move for a new trial is served and filed and the motion is denied, the time for filing notice of appeal from the judgment is extended until 30 days after entry of the order denying the motion.

*Verdier* v. *Verdier,* 203 Cal.App.2d 724, 732 [22 Cal.Rptr. 93] (hearing in Supreme Court denied) decided that although rule 3, *supra,* uses the word "judgment," by reason of the definitions contained in rule 40, Rules of Court, the rule is extended and includes appealable orders.

▬ Although not specifically determined in *Garcia* v. *City & County of San Francisco,* 250 Cal.App.2d 767, 770 [58 Cal.Rptr. 760], (hearing in Supreme Court denied), the effect of the opinion is that an order denying a petition for leave to file a late claim is an appealable order. The determination in *Garcia, supra,* is consistent with the legal principle that an order is appealable when its effect is final judgment. (3 Witkin, Cal. Procedure (1954) Appeal, p. 2162, § 19; see also Van Alstyne, Cal. Gov. Tort Liability, 395.)

▬ Being appealable, the notice of appeal from the order denying the petitioner's petition was subject to rule 3.

By mathematical calculation, petitioner's motion for reconsideration was filed beyond the 10th day. However, the 10th

day after the service of notice of the denial of the petition was on Sunday, thereby extending the date of filing to Monday, August 29. Since the motion was filed within time, the provisions of rule 3, Rules of Court, became applicable. (*Verdier* v. *Verdier, supra.*) The notice of appeal from the order of June 6 as entered on June 9 was within time for it was filed within the 30-day period delineated in rule 3, Rules of Court.

This resolution does not satisfy the attempted notice of appeal from the order entered on September 27. The order entered on that date denied a reconsideration of the same identical matter, affidavits, declarations and evidence as had been considered by the court on the petition decided June 6. This attempted appeal from the September 27 order should be dismissed.

 It was for the trial court to decide whether petitioner brought herself within the provisions of section 946.6, *supra.* It decided she had not and we concur.

In *Tammen* v. *County of San Diego,* 66 Cal.2d 468, the court stated at pp. 475-476 [58 Cal.Rptr. 249, 426 P.2d 753] : "The showing required as to mistake, inadvertence, etc. under section 912, subdivision (b)(1), is the same as required under section 473 of the Code of Civil Procedure for relieving a party from a default judgment. (See Van Alstyne, Cal. Government Tort Liability (Cont. Ed. Bar) § 8.29, pp. 388-389; fn. 4, p. 711.) "

 Excusable neglect is that neglect which might have been the act of a reasonably prudent person under the same circumstances. (*Tammen* v. *County of San Diego, supra,* at pp. 478-479; *Garcia* v. *City & County of San Francisco, supra,* at pp. 770-771; *Alderman* v. *Jacobs,* 128 Cal.App.2d 273, 276 [274 P.2d 930].)

 The trial court's determination that petitioner failed to bring herself within the requirements of section 946.6 was supported by the affidavits, declarations and evidence before it.

The attempted appeal from the order entered September 27 is dismissed. The order made on June 6 and entered on June 9 is affirmed.

Kerrigan, J., and Tamura, J., concurred.