[Civ. No. 4867. Fourth Dist. Sept. 27, 1954.]

ROBERT C. HERRMANN, Plaintiff and Appellant, v. FIREMAN'S FUND INSURANCE COMPANY (a Corporation), Defendant and Respondent; JOHN P. DIETERICH, Defendant and Appellant.

Gray, Cary, Ames & Frye for Plaintiff and Appellant.

Newell & Chester for Defendant and Appellant.

McCutchen, Black, Harnagel & Greene, Harold A. Black and Philip K. Verleger for Defendant and Respondent.

MUSSELL, J.—This is an action for declaratory relief in which plaintiff seeks recovery from either or both defendants, Fireman's Fund Insurance Company and John P. Dieterich, for loss of the yacht "Coronado," which sank on the early morning of January 18, 1953, while en route from San Diego to Newport Beach, California.

Plaintiff alleged that on or about October 3, 1952, the defendant insurance company issued a policy of insurance in the amount of $20,000, for a period of one year, covering plaintiff's yacht. Plaintiff engaged a brokerage firm in San Diego to sell the vessel for him and John A. Miller, Jr., salesman employed by this firm, entered into negotiations with defendant Dieterich for the sale of the vessel to him. As a result of such negotiations, on or about January 8, 1953, plaintiff and defendant Dieterich entered into a written agreement for the sale of the vessel to Dieterich for the sum of $16,000 and Dieterich paid the sum of $1,200 as a deposit. It was further alleged that plaintiff and Dieterich agreed that the vessel should be transported to Newport Beach; that on or about January 16, 1953, Dieterich gave to the brokerage firm his check in the amount of $14,840.48, payable to plaintiff, as payment of the balance of the purchase price of the yacht; that on January 17, 1953, with the permission of plaintiff, Miller and defendant Dieterich took the vessel from San Diego for the purpose of delivering it to Newport Beach and that in the early morning of January 18, 1953, the vessel struck a submerged object and sank; that proof of loss was made to defendant insurance company and plaintiff's demand for payment was refused by it; that defendant Dieterich had stopped payment on his check for $14,840.48 and refused to pay said sum or any part thereof; that an actual controversy exists between plaintiff and the defendant insurance company in regard to their respective rights and liabilities upon and in connection with said policy of insurance, and between plaintiff and defendant Dieterich upon and in connection with said agreement of sale; that the defendant insurance company contends that the interest of plaintiff in said vessel was transferred to defendant Dieterich before the time of said sinking and loss and said policy was, therefore, according to the terms thereof, avoided prior to said sinking and loss; that defendant Dieterich contends that the interest of plaintiff in said vessel was not transferred to said defendant prior to the time of said sinking and loss and, therefore, said defendant is not liable upon said agreement of sale and that he is entitled to the return of the $1,200 deposit made by him; that plaintiff is in doubt as to whether he is entitled to redress against the insurance company or defendant Dieterich, or both of said defendants.

Defendant Dieterich demurred generally and specially and

his demurrer was overruled. In his answer he admitted negotiating for the purchase of the vessel; that the sales agreement was entered into on January 8, 1953; that on or about January 16, 1953, he delivered to the brokerage firm his check, payable to plaintiff, in the sum of $14,840.48 as payment in full of the purchase price; that he and plaintiff's agent, Miller, took the vessel from San Diego for the purpose of delivering it at Newport Beach and that en route the vessel sank and was rendered a total loss. He denied that the vessel had hit a submerged object and alleged that it sank because of a defective propeller or propeller blade. He admitted stopping payment on the check given for the payment of the balance of the purchase price and alleged that the interest of the plaintiff in the vessel had not been transferred to him prior to her sinking and therefore claimed that he was entitled to the return of his $1,200 deposit.

In its answer the defendant Fireman's Fund Insurance Company admitted the execution of the policy involved, admitted the negotiation between plaintiff and defendant Dieterich leading up to the execution of the sales agreement, admitted that on or about January 17, 1953, defendant Dieterich took said vessel from San Diego and en route to Newport Beach it sank, admitted that it is the contention of the defendant insurance company that the interest of plaintiff in said vessel was transferred to said John P. Dieterich prior to the loss of said vessel, and that said policy was, therefore, according to the terms thereof, avoided. It was further admitted that there is a controversy between plaintiff, defendant Fireman's Fund Insurance Company, and defendant John P. Dieterich, and it was alleged that there is a further controversy between plaintiff and defendant in that the insurance company asserts that even if said interest was not transferred to John P. Dieterich, as aforesaid, said policy was in any event avoided by reason of the fact that there is as a matter of law an implied warranty of seaworthiness of said vessel at any time when said vessel puts out to sea and that said vessel was unseaworthy at the time she commenced the voyage to Newport Beach because said vessel had a loose blade in her propeller.

Trial was had without a jury and the court found, *inter alia*, that the purchase price of the vessel had been paid by defendant Dieterich; that upon payment of the purchase price, title to the vessel passed to defendant Dieterich; that it is not true that plaintiff agreed to deliver said vessel to Newport Beach and it is not true that plaintiff and said defendant

agreed that said defendant would not become the owner of said vessel until such time as it arrived at Newport Beach; that delivery of the vessel to defendant Dieterich took place at San Diego when he and two friends designated by him to serve as crew boarded said vessel to take the same to Newport Beach; that said John A. Miller did not, by accompanying said John P. Dieterich and said crew to Newport Beach with said vessel, retain said vessel in the possession of plaintiff; that on the contrary, said vessel was in possession of said defendant Dieterich from the time the same left San Diego; that "an actual controversy exists between plaintiff and defendant Fireman's Fund Insurance Company in regard to their respective rights and liabilities upon and in connection with said policy of insurance, and between plaintiff and defendant John P. Dieterich upon and in connection with said agreement for sale"; that said vessel was in a seaworthy condition at the time she commenced the voyage to Newport Beach and that the interest of said plaintiff in said vessel and the result of loss were transferred to defendant Dieterich prior to the said sinking and loss of said vessel.

The court concluded that plaintiff was entitled to judgment against defendant Dieterich in the sum of $14,840.48, interest and costs, and the defendant Fireman's Fund Insurance Company was entitled to a dismissal. Judgment was entered in accord with these conclusions and the findings and these appeals followed.

Plaintiff appeals from that part of the judgment which is as follows: "It is further ordered, adjudged and decreed that the complaint be dismissed as to Fireman's Fund Insurance Company and that said defendant recover from plaintiff its costs of suit herein incurred in the sum of $8.50." Defendant Dieterich appeals from that portion of the judgment adjudging that he pay plaintiff the sum of $14,840.48, interest and costs.

Appellant Dieterich contends that the court erred in overruling his demurrer to the complaint; that the complaint failed to state a cause of action in declaratory relief against him and that the ruling of the trial court had the effect of depriving him of his right to trial by jury. These contentions are untenable. ■ The purpose of declaratory relief is to liquidate uncertainties and controversies which might result in future litigation. ■ Whether a determination is proper in an action for declaratory relief is within the trial court's discretion and the court's discretion to grant or deny relief

will not be disturbed on appeal unless it be clearly shown that the discretion was abused. (*Hannula* v. *Hacienda Homes,* 34 Cal.2d 442, 448 [211 P.2d 302, 19 A.L.R.2d 1268].) ▮ In *Columbia Pictures Corp.* v. *DeToth,* 26 Cal.2d 753, 760-761 [161 P.2d 217, 162 A.L.R. 747], it was held that a complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a contract and requests that these rights and duties be adjudged by the court; that it is not essential, to entitle a plaintiff to seek declaratory relief, that he should establish his right to a favorable declaration; that the purpose of the declaratory judgment is to ''serve some practical end in quieting or stabilizing an uncertain or disputed jural relation''; that the court is empowered to determine disputed questions of fact and hence the remedy is not limited to cases involving a written instrument and that a disputed oral contract may properly be the subject of a declaratory judgment. ▮ It was further held:

''That a cause of action otherwise may have accrued and that other adequate relief may be available to plaintiff at the time are also factors to be considered by the court. ▮ The remedies provided by the statute are cumulative and declaratory relief may be asked alone or with other relief (Code Civ. Proc., §§ 1060-1062). Hence a plaintiff's right to proceed is not barred by the fact that the contract sued upon may have already been breached and that traditional or statutory (see Civ. Code, § 3423, subd. 5; Code Civ. Proc., § 526) alternative remedies are available. In *Maguire* v. *Hibernia S. & L. Soc., supra* [23 Cal.2d 719 (146 P.2d 673, 151 A.L.R. 1062)], at page 732, this court, in reversing judgments entered on demurrers to complaints sustained without leave to amend, stressed the point that before declaratory relief may be denied on the ground of the existence of other remedies, 'it must clearly appear that the asserted alternative remedies are available to the plaintiff and that they are speedy and adequate or as well suited to the plaintiff's needs as declaratory relief. (See *Ermolieff* v. *R.K.O. Radio Pictures,* 19 Cal.2d 543, 549 [122 P.2d 3]; *Henderson* v. *Oroville-Wyandotte Irr. Dist.,* 207 Cal. 215, 216 [277 P. 487]; *Welfare Investment Co.* v. *Stowell,* 132 Cal.App. 275, 278 [22 P.2d 529]; Borchard, Declaratory Judgments, p. 293 et seq.)' ''

It is quite clear that the existence of a controversy relating to the legal rights and duties of the respective parties herein

was alleged in the complaint. The contentions of the plaintiff and the two defendants relative to their respective rights under the written agreement, the insurance policy and the alleged oral agreement were therein set forth and the court was called upon to determine whether there was an agreement to deliver the vessel at Newport Beach, whether delivery took place in San Diego and whether title to the vessel passed from plaintiff to defendant Dieterich prior to the loss of the vessel, as well as other issues. In this connection it may be observed that the defendant insurance company admits in its answer that there is a controversy between the parties.

Appellant Dieterich argues that the entertainment of an action for declaratory relief is properly refused where an adequate remedy exists under some other form of action. However, that question was a factor to be considered by the court (*Columbia Pictures Corp.* v. *DeToth, supra,* 26 Cal.2d at p. 761), and its determination of the question of the availability of the alternate remedies, their adequacy and suitability to plaintiff's needs cannot be here disturbed where there is substantial evidence to support the findings of the court and no abuse of discretion is shown.

Appellant Dieterich also contends that the finding of the trial court that the vessel was delivered to him in San Diego is contrary to the facts admitted by the pleadings. However, the complaint does not allege that delivery of the vessel by plaintiff to defendant Dieterich was to take place at Newport Beach. It is alleged therein that plaintiff and defendant agreed that said vessel should be transported to Newport Beach but this is not an allegation that plaintiff agreed to deliver it there as a condition to the passage of title. Furthermore, in the paragraph of the complaint alleging that the vessel should be transported to Newport Beach the plaintiff incorporated by reference the entire agreement of sale in which it is set forth that the vessel is accepted "as is and where is" if the sale is consummated. As was said in *Geimann* v. *Board of Police Commr's.,* 158 Cal. 748, 753 [112 P. 553] :

". . . [w]here any doubt may be fairly said to exist as to the full and complete sufficiency of the admission, the court will not construe such a pleading so as to deprive the party of his right to a contest of the alleged fact and to a determination of the existence or nonexistence of the alleged fact after hearing."

Moreover, the issue of delivery was raised by the answer of

the defendant insurance company and was properly before the court. (*Jones* v. *Pleasant Valley Canal Co.*, 44 Cal.App.2d 798 [113 P.2d 289].)

 Appellant Dieterich further contends that the findings that in accompanying the vessel to Newport Beach John Miller was not acting as an agent of plaintiff; that the delivery of the vessel took place in San Diego and that plaintiff and defendant did not agree to deliver the vessel at Newport Beach are not supported by the evidence. The evidence upon which these findings are based is conflicting and we cannot here disturb the determination of the trial court based on conflicting evidence where there is substantial evidence to support the findings. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].)

 Finally, defendant Dieterich contends that he was wrongfully deprived of a trial by jury. However, the record does not show that he made a demand for such a trial. By failing to make such a demand, the right thereto was waived. (Code Civ. Proc., § 631, subd. 4; *Glogau* v. *Hagen*, 107 Cal. App.2d 313, 316 [237 P.2d 329]; *Cloud* v. *Market St. Ry. Co.*, 74 Cal.App.2d 92, 101 [168 P.2d 191].)

Plaintiff's position on his appeal from that part of the judgment dismissing the complaint as to the Fireman's Fund Insurance Company is that the fundamental question presented is whether or not the evidence supports the finding of the trial court that title to the vessel passed from plaintiff to defendant Dieterich prior to her loss; that if the evidence supports the finding of the trial court that title did pass before the vessel sank, judgment against defendant Dieterich must be affirmed, and if the evidence shows that title did not pass to defendant Dieterich prior to the loss, then the judgment must be reversed and plaintiff is entitled to judgment against defendant Fireman's Fund Insurance Company, for its defense was based upon the assumption that title had passed.

The policy of insurance issued to plaintiff by the defendant Fireman's Fund Insurance Company contained the following provision:

"Transfer of interest. Warranted this insurance shall be void in case this policy or the interest insured thereby shall be sold, assigned, transferred or pledged without the previous consent in writing of this Company."

There was no transfer of interest in compliance with this provision relative to the consent of said company and the

trial court's finding that the interest of plaintiff in said vessel and the result of loss were transferred to defendant Dieterich prior to the sinking and loss of the vessel is supported by substantial evidence.

The sales agreement between plaintiff and defendant Dieterich was dated January 8, 1953, and provided in part as follows:

"OFFER TO PURCHASE
AND
SALES AGREEMENT

"Date January 8, 1953

"Sir:

"You are hereby authorized to offer the sum of $16,000.00 and I agree to purchase for said sum the CORONADO U. S.

(Name of Vessel)

Customs or Documentary No. 38E1176 on the terms as hereinafter set forth.

"This offer is accompanied by the deposit of $1,200.00 to be applied on account of purchase price and the balance to be paid in full upon acceptance.

"The Owner is to furnish a clear title to the vessel in accordance with regulations of U. S. Customs, U. S. Coast Guard and Tax Departments, County, City and State.

. . . . . . . . . . . .

"It is understood and agreed that this offer is made subject to satisfactory performance under trials and to an acceptable survey to be made by an impartial surveyor, to be selected by me.

"I understand that information furnished me concerning this vessel is believed to be correct and it is to be sold subject to Owner's consent and if this sale is consummated, said vessel is accepted by me 'as is and where is' without warranty either special or implied. Any representation other than those herein contained are not to be considered and all representations concerning said vessel unless set forth herein are not a part of this agreement and have not been relied upon by me in this offer to purchase said vessel.

. . . . . . . . . . . .

"Should this offer of purchase fail to be completed under the terms and conditions herein set forth the above deposit will be refunded, less any expense incurred for the Purchaser's benefit.

"Unless accepted, this offer will expire on accepted.

"It is understood that all taxes are paid for the year 1952-3 and are to be pro-rated from the date of sale.

"Buyer's Name JOHN P. DIETERICH
Signed

Owner's Name ROBERT C. HERRMANN
Signed

Accepted by
JOHN P. DIETERICH
(signed)

Buyer
JOHN P. DIETERICH

Accepted by Owner
ROBERT C. HERRMANN
(Signed)

Date Jan. 8, 1953."

At the time Dieterich took possession of the vessel in order to take it to Newport Beach all of the terms and conditions of the contract had been met and checks for the full purchase price had been delivered. There was no flaw in the owner's title proven and the evidence disclosed no liens, mortgages or obligations outstanding. Defendant Dieterich had a trial run of the vessel before he signed the contract and his surveyor had examined the vessel prior to January 8, 1953. The written contract imposed on the seller no obligation to deliver the vessel to Newport Beach for the contract specified that "said vessel is accepted by me 'as is and where is.'"

Section 1738 of the Civil Code provides as follows:

"*Property in specific goods passes when parties so intend.* (1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

Section 1739 of the Civil Code provides in part as follows:

"*Rules for ascertaining intention.* Unless a different intention appears, the following are rules for ascertaining the

intention of the parties as to the time at which the property in the goods is to pass to the buyer.

"*Rule 1.* (*Goods in deliverable state.*) Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed."

At the time the contract was signed by the parties herein the yacht was in a deliverable state and there was no condition further to be met upon which the buyer's obligation depended. ▮ Checks were delivered to plaintiff by defendant Dieterich in payment of the full purchase price and it has been held that payment is evidence of transfer of title. (*Johnson* v. *Besoyan,* 85 Cal.App.2d 389, 392 [193 P.2d 63]; *Woodbine* v. *Van Horn,* 29 Cal.2d 95, 107 [173 P.2d 17].) The evidence further shows that defendant Dieterich placed liability coverage on the vessel before it left San Diego and in compliance with the provision of the contract for the proration of taxes from the date of sale defendant Dieterich included approximately $40 for personal property taxes in his check to plaintiff for the balance due on the contract. The contract of sale reads in part ". . . if this sale is consummated, said vessel is accepted by me 'as is and where is.' " This is a plain provision in writing covering the acceptance and place of delivery of the vessel.

▮ It is held in *Woodbine* v. *Van Horn, supra,* 104, that where the language employed in a contract is fairly susceptible of either of two constructions contended for, extrinsic evidence may be resorted to for the purpose of explaining the intention of the parties. In the instant case such evidence was admitted. However, the testimony of the parties and the broker, Mr. Miller, merely created a conflict in the evidence, the determination of which cannot be here disturbed.

Judgment affirmed.

Griffin, Acting P. J., concurred.

The petition of defendant and appellant (Dieterich) for a hearing by the Supreme Court was denied November 24, 1954.