339 P.2d 594]

[Civ. No. 18287. First Dist., Div. One. June 1, 1959.]

EUGENE A. TALIAFERRO, Appellant, v. DOROTHY D. TALIAFERRO, Respondent.

E. A. Taliaferro, in pro. per., for Appellant.

Frisbie & Hoogs for Respondent.

TOBRINER, J.—The superior court granted judgment that appellant "take nothing by" his seventh amended complaint and refused to enter a default judgment for appellant.

We consider the validity of the lower court's action as to

each of the six counts of the complaint and as to its refusal to render judgment by default.

Count One seeks to vacate the "court's action" in approving a settlement agreement, entered into on December 1, 1943, which divided the community property and provided for the support of appellant's wife and minor children. Appellant claims he was induced to sign the settlement agreement "to persuade" respondent to proceed with a divorce action she filed on September 7, 1943, in Contra Costa County, and "to secure a divorce decree without contest." But, according to the complaint, appellant was induced to sign the agreement by fraud in that respondent concealed the fact that long prior to the settlement agreement she had obtained, on July 7, 1932, an interlocutory decree of divorce in the Superior Court of San Francisco which did not provide for alimony or support. The "existence" of the earlier decree was "concealed from" appellant "until the month of December, 1954," when he learned of the 1932 decree.

Three separate problems for decision lie within this count: (1) whether the alleged concealment of the 1932 decree serves as a sufficient basis for setting aside the 1943 decree; (2) whether the procurement of the 1932 decree and the subsequent filing of 1943 constituted a fraud on the court; and (3) whether an alleged "later" statement of respondent to appellant to the effect that she had instructed her attorney to dismiss the 1932 divorce action constitutes a basis for setting aside the 1943 decree.

Appellant's allegations of Count One directly attack the Contra Costa decree on the basis of extrinsic fraud, and as such they must be considered in the light of general theories applicable to this kind of situation. Two competing considerations must be reconciled: the policy which favors the termination of litigation so that "issues involved in a case be set at rest by a final judgment" (*Jorgensen* v. *Jorgensen* (1948), 32 Cal.2d 13 at 18 [193 P.2d 728]) and the policy that protects against the procurement of such a judgment by fraud. Whatever varying conglomeration of facts may induce a court to conclude that one or the other policy should apply in the particular instance, an overriding consideration must be the presence or the lack of opportunity to the aggrieved party to prevent the alleged deception. The importance of finality of judgment is too vital to subject it to the neglect of an idle party whose inaction induces his own misfortunes.

Appellant cites *Scott* v. *Dilks* (1941), 47 Cal.App.2d 207

[117 P.2d 700], and *Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d 13, for the proposition that a fraud which prevents a party from raising a defense is a valid ground upon which to levy a direct attack upon a judgment. But the Supreme Court, in *Jorgensen,* actually refused relief because the moving party failed to investigate the facts, relying instead upon the representations of the other. Although the husband concealed the facts as to the community property of the marriage, inducing the negotiation of a property settlement which the wife sought to avoid for fraud, the court, speaking through Justice Traynor, rules: ''Plaintiff is barred from obtaining equitable relief by her admission that she and her attorney did not investigate the facts, choosing instead to rely on the statements of the husband as to what part of the disclosed property was community property.'' (P. 23.)

Appellant's information as to the filing of the 1932 divorce and his failure to follow through on that action precludes his present plea. Appellant's own complaint does not allege any lack of service of appellant as to the San Francisco action; to the contrary appellant states in his brief, ''It may be admitted that Appellant was served with a copy of the complaint and summons. . . .'' He further contends that ''later'' respondent told him ''she was going to dismiss the action'' and had ''instructed her attorney to dismiss.'' In the face of this train of knowledge appellant's opportunity to investigate and to protect his position was manifold. This failure to shield himself as to the 1932 divorce can hardly become a sword to demolish the 1943 court-approved settlement.

The second query which we outlined above as to the claimed fraud upon the court because of the second filing cannot advance appellant's position.

While appellant relies upon *Titensor* v. *Titensor* (1946), 75 Cal.App.2d 206 [170 P.2d 479], that case held only that allegations of the same acts in support of a second divorce as those set forth in a previous decree would be barred as res judicata. However, the fact that a plaintiff sues a second time to determine a matter already barred by the doctrine of res judicata does not constitute fraud on the court; res judicata is a defense (*Boucher* v. *Kriehn* (1947), 80 Cal.App.2d 437 [182 P.2d 218]) and if not raised by the defendant it is waived (*Dillard* v. *McKnight* (1949), 34 Cal.2d 209 [209 P.2d 387, 11 A.L.R.2d 835]).

The final query relating to appellant's contention that

he was misled by respondent's promised instructions to her attorney to dismiss the 1932 divorce action does no more for him than the previous considerations. The allegations are not contained in the proffered complaint; neither are they in any transcript; they, therefore, even if true, cannot be considered by this appellate court. (*Newman* v. *Board of Civil Service Comrs.* (1956), 140 Cal.App.2d 907 [296 P.2d 41].) While appellant cites *Daut* v. *Daut* (1950), 98 Cal.App.2d 375 [220 P.2d 63], in this connection, it does not serve him. In that case defendant lacked actual knowledge of the prior divorce proceedings; she was never served; summons were mailed to her under a different name. Consequently, she was not put on notice of the possibility of adjudication of the matter in such prior proceeding. In our case appellant admits service of summons in the prior action; he did have notice; he could have acted in the prior proceeding.

For the above reasons we conclude that Count One does not state a cause of action.

 The second count constructs an alleged factual foundation for setting aside the 1943 property settlement as such. In substance appellant contends that he entered into the property settlement upon the mistaken belief that the property covered was community. He learned in December, 1954, of the existence of the decree of July 7, 1932, and of "the allegation of the complaint upon which it was based to the effect that there was no community property." Alerted by this late discovery, appellant, after a 20-year interval, found that contrary to respondent's contention the property was "not . . . in fact community property at all." Consequently, claims appellant, he was misadvised by his own and opposing counsel and the entire contract should be nullified. Since the count asks, however, not to set aside the decree but the contract exclusively, appellant contends he makes no collateral attack upon the judgment.

Accepting, as we must, this rather unusual narration of the facts, we are nevertheless unable to find that this was not a collateral attack.

The first count obviously ties the property settlement to the decree. Indeed "it appears to be well settled, that if the agreement is presented to the court in the divorce proceeding for adjudication, and the agreement, or a part thereof, is incorporated in the decree and made a part thereof, the part so incorporated is merged in the decree." (*Hough* v. *Hough*, 26 Cal.2d 605 at 609 [160 P.2d 15].) Moreover, Count

One actually alleges that the court approved the contract of December 1, 1943, and made it part of the decree by reference. We know of no reason why the court below could not in considering Count Two be advised of the facts recited in Count One. The court was not required to put on blinders so as to inspect the complaint piecemeal or to see each count in isolation. *Rose* v. *Ames* (1942), 53 Cal.App.2d 583 [128 P.2d 65], upholds the sustaining of a demurrer to a common count of a complaint in which another and more specific count pleaded facts showing the common count rested upon the same basis as the other count. The court sustained the demurrer to the common count which was "obviously based on the set of facts specifically pleaded in the other count." (P. 589.)

Since appellant's rights under the settlement agreement were merged in the decree, appellant's attack is collateral and the count does not state a cause of action.

■ Count Three requests that the contract of December 1, 1943, be declared null and void as against public policy because respondent agreed collaterally in the written contract that she would procure a divorce. The count fails on these bases: (1) as the lower court stated, "[T]he parties are in pari delicto" (see *Bancroft* v. *Bancroft* (1918), 178 Cal. 359 [173 P. 579, L.R.A. 1918F 1029], wherein the court refused to set aside an interlocutory decree when attacked by one of the guilty parties); (2) it seeks to set aside the agreement only without setting aside the decree; the fallacy of such an attempt has been discussed under Count Two; (3) as the lower court properly pointed out, the allegation that the contract itself is "against public policy as promotive of divorce" fails because the contract as such is not violative of public policy.

■ Count Four alleges that appellant and respondent "cannot agree on just what liens Plaintiff must pay when due, and what taxes and assessments Plaintiff is obligated to pay when levied, and just how the division of any proceeds concerning the sale of any properties should be made, and just what Plaintiff's rights of management under the terms of the contract are."

The count fails because, first, the trial judge found such relief not "necessary or proper at this time." Section 1061 of the Code of Civil Procedure, providing for declaratory relief, empowers the court to deny relief "in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." ■ Such denial "is within the trial court's discretion and the court's dis-

cretion . . . will not be disturbed on appeal unless it be clearly shown that the discretion was abused." (*Herrmann* v. *Fireman's Fund Ins. Co.* (1954), 127 Cal.App.2d 560, 565-566 [274 P.2d 501].) Appellant makes no showing whatever as to any abuse of discretion.

Second, the failure of appellant to show that respondent controverted the stated claim amply supports the trial judge's conclusion that no "particular dispute" is alleged. Confirmation of this position lies in the very citation of appellant: 2 Witkin, California Procedure (1954), § 449, p. 1431, which quotes *Maguire* v. *Hibernia S. & L. Soc.* (1944), 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062], to the effect that the complaint must allege an actual controversy.

Count Five attempts an impossible declaration of rights against an individual, not a party to the action, who is described as having made claims to some of the involved property because of a subsequent marriage to respondent. In addition to the defects already set out as to the previous declaratory relief of Count Four, the instant one suffers from the fatal flaw of seeking relief against one not served with process. (*People* v. *Broad* (1932), 216 Cal. 1 [12 P.2d 941].)

Count Six, a common count, claims respondent is indebted to appellant in the amount of $20,000, none of which has been paid. As we have said *supra*, the common count rests upon the same facts as the first specific ones, and it cannot serve to raise appellant's contentions beyond the level of the previous inadequate allegations.

Appellant's final contention is that the court should not have entered judgment for respondent while she was in default. Since the complaint showed no ground for relief, the default of one of the parties could not improve it. The superior court aptly noted, *Williams* v. *Foss* (1924), 69 Cal. App. 705 at 707 [231 P. 766] : "The default admitted nothing more than was alleged in the complaint."

The judicial process has proceeded beyond the point at which a judge, like an umpire of a sporting event, records fouls or defaults of two contestants. The court's function must be to protect the legitimate interests of all the parties even in the situation where one party does not appear. Thus the court below properly determined, upon application for default judgment, that the complaint did not support a judgment. The inadequate allegations could not compose causes of action merely because of the absence of the opposing party. Even if

the complaint did state a cause of action a bare prayer for $20,000 should not turn to gold because of the nonappearance of an adversary. The court could properly determine if there were any evidence to sustain such damages, and it obviously found nothing due here.

We affirm the judgment.

Bray, P. J., and Wood (Fred B.), J., concurred.