Filed 3/12/14  Widjaja v. Gao CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DENNI WIDJAJA et al.,<br><br>  Cross-complainants and Respondents.<br><br>  v.<br><br>TIE GAO,<br><br>  Cross-defendant and Appellant. | B240721<br><br>(Los Angeles County<br>Super. Ct. No. KC061826) |

  APPEAL from a judgment of the Superior Court of the County of Los Angeles, Dan T. Oki, Judge.  Reversed and remanded.

  Law Offices of Steven P. Scandura, Steven P. Scandura for Cross-defendant and Appellant.

  Law Offices of Paul P. Cheng, Paul P. Cheng, Jie Lian, Anna N. Tran for Cross-complainants and Respondents.

## INTRODUCTION

Appellant and Cross-defendant Tie Gao (cross-defendant) appeals a default judgment in favor of Cross-complainants and Respondents Denni Widjaja and Alex. A. Sukamtoh (cross-complainants) on cross-complainants' claims for rescission of a construction contract and restitution. Cross-defendant contends that the trial court erred in issuing the default judgment because, according to cross-defendant, the default judgment was based on a cause of action to which he was not named as a cross-defendant, it was based only on the alleged lack of a contractor's license, and the cross-complaint did not give him reasonable notice of the extent of the damages awarded to cross-complainants. In his reply brief, cross-defendant contends that he cannot be held liable for the restitution damages because he was not a party to the agreement. We reverse the judgment because cross-complainants have not pleaded or presented sufficient evidence to establish cross-defendant's liability for rescission damages, and remand the matter to the trial court with instructions to enter a new judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Cross-complainants filed a cross-complaint against US Power Investment Inc., aka US Power Construction, Inc. (US Power), a California corporation, cross-defendant, and American Contractors Indemnity Company (Surety).[1] Cross-complainants made "common allegations" that they were husband and wife; "US Power" was a California corporation; "U.S. Power Investment Inc." was a general licensed contractor; "defendant" was not licensed as a general contractor under the name of "US Power Construction, Inc."; and cross-defendant was the chief executive officer and president of "US Power."

The cross-complaint's first cause of action was for breach of contract asserted against "US Power," alleging that cross-complainants owned a single-family residence in Walnut, California; entered into an agreement with "US Power" to demolish an existing structure and construct a new single-family residence on the property (project) for

---

[1]     US Power and Surety are not parties to this appeal.

2

$339,700; and performed all conditions, covenants, and promises under the agreement, "including the payment of approximately $246,100 as fees as specified in the agreement." Cross-complainants attached a copy of the agreement to the cross-complaint. The agreement purportedly was executed by cross-complainant Sukamtoh and "US Power Construction, Inc.," provided an address for US Power Construction, Inc. in Alhambra, CA, and referenced license number 845970.

Cross-complainants alleged in their first cause of action, asserted against US Power, that US Power breached the agreement by, among other things, abandoning the project, refusing to complete the scope of work, failing to pay subcontractors and material men, hiring unlicensed subcontractors, and permitting laborers to drink beer on the project, and as a result of those breaches, cross-complainants have been injured in excess of $80,000.

The second cause of action was for negligence asserted against cross-defendant and US Power; the third cause of action was for recovery against contractor's licensed bond asserted against US Power and Surety; the fourth cause of action was for recovery for unlicensed practice asserted against US Power; the fifth cause of action was for rescission and restitution asserted against cross-defendant and US Power; and the sixth cause of action was for conversion asserted against cross-defendant and US Power. Each cause of action incorporated the paragraphs contained in the cross-complaint that preceded it. This appeal concerns the fourth and fifth causes of action.

The fourth cause of action asserted against US Power alleged that, inter alia, that "while cross-defendant is licensed in the name of US Power Investment, Inc., its contract in this action was in the name of US Power Construction, Inc., . . . , [an] unlicensed entity. Thus, Cross-Defendant . . . is barred from suing under Business and Professions Code § 7031."[2] Cross-complainants allege in the fourth cause of action that they "are entitled to rescind the contract and to the return of all funds paid to Cross-Defendants."

---

[2] All statutory citations are to the Business and Professions Code unless otherwise noted.

3

The fifth cause of action asserted against cross-defendant and US Power alleged that "any agreement" between cross-complainants and cross-defendant and US Power was "based on '[d]efendant's' unlawful activities and the unlawful nature of the [a]greement." Cross-complainants allege in the fifth cause of action that they "intend service of the Summons and Cross-Complaint in this action to serve as notice of rescission and hereby seek further consequential damages according to proof at trial but not limited to any consideration paid or offered by" them.

The prayer for both the fourth and fifth causes of action sought the rescission of all agreements between cross-complainants and cross-defendants, and the return of all monies paid by cross-complainants. The cross-complaint did not contain allegations that either "US Power Investment, Inc." or "US Power Construction, Inc.," was the alter ego of cross-defendant or that cross-defendant was the alter ego of those entities, nor does it allege who executed the agreement on behalf of "US Power Construction, Inc."

The default of cross-defendant and US Power was entered on the cross-complaint. Cross-defendant and US Power filed a motion to set aside default, inter alia, pursuant to Code of Procedure section 473, subdivision (b) on the ground that default was taken as a result of cross-defendants' mistake, inadvertence, and neglect. The trial court denied the motion and set hearing on an order to show cause regarding a default judgment.

Cross-complainants served cross-defendant and US Power with a request for entry of judgment seeking a total recovery of $452,439.52, consisting of $182,488.91 demanded in the cross-complaint, $22,811.11 for interest, $1,039.50 for costs, and $246,100.00 for restitution. Cross-defendant and US Power filed an opposition to request for entry of judgment, on the ground that, inter alia, the damages sought in the request for judgment exceeds damages demanded in the cross-complaint. Cross-complainants filed a revised interest calculation stating that the accrued interest on their "damages of $246,100.00 for rescission" totaled $32,243.24.

In support of their request for entry of judgment, cross-complainants filed a declaration of cross-complainant Sukamtoh, attaching a copy of the agreement, an undated fictitious business statement filed with the Los Angeles County Clerk reflecting

4

that "US Power Construction Company" was a fictitious business name for "US Power Investment Inc.," executed by cross-defendant as the president of "US Power Investment Inc."; and a November 4, 2005, statement of information disclosing that cross-defendant was the chief executive officer, secretary, chief financial officer, and an officer of "US Power Investment Inc." The declaration also attached a copy of a contractors state license board–contractor's license detail, bearing an "extract date" of December 20, 2010, stating that "US Power Investment Inc." was a licensed contractor under license number 845970,[3] cross-defendant was its chief executive officer (CEO) and president, and other individuals were its "RME," "RMO," and "OFFICER."

Cross-complainant Sukamtoh declared, inter alia, that cross-complainants spoke only with cross-defendant during the project; Sukamtoh discussed the progress of the project, billing and payments with cross-defendant only; cross-defendant gave cross-complainants a business card[4] that stated, "'US Power Construction Inc.,' not the licensed name of US POWER INVESTMENT INC."; the fictitious business statement stated that "US POWER does business as 'US Power Construction Company,' not US Power Construction, Inc., the name on the Agreement and business card"; cross-complainants paid $246,100 "as fees specified in the Agreement"; cross-complaint Sukamtoh and "US Power" agreed that $36,500.00 would be deleted from the agreement if "US Power" completed the project with satisfactory work; and "US Power" did not provide cross-complainants with a home improvement contract with all of the warnings to consumers that are required by law. There is no evidence in the record of the person who executed the agreement on behalf of US Power or US Power Construction, Inc.

At the hearing on the order to show cause regarding a default judgment, the trial court's findings in its tentative ruling that it "incorporated into the court file" stated, inter

---

[3] US Power Investment, Inc.'s license number and address listed on the contractors state license board–contractor's license detail is the same license number and address listed for US Power Construction, Inc. in the agreement.

[4] The business card bore license number 845970, the same license number under which "US Power Investment Inc." was licensed and was referenced in the agreement.

5

alia, that cross-complainants "seek to void the agreement" because "US Power did not provide [cross-complainants] with a home improvement contract with all of the warnings to consumers that are required by law," and "seek return of the $246,100.00 paid to them [*sic*] since cross-defendants operated as an unlicensed contractor." The trial court stated it could not provide cross-complainants with both restitution and damages for breach of the agreement; that to provide cross-complainants with their request for $182,488.91 in damages, the cross-complaint would have to be amended because it only seeks $80,000 in damages; and that it was "willing to enter judgment for restitution in the sum of $246,100.00, plus appropriate prejudgment interest, plus costs of suit."

As noted above, both the fourth cause of action for recovery for unlicensed practice asserted against US Power, and the fifth cause of action for rescission and restitution asserted against cross-defendant and US Power sought to rescind the contract and have all monies paid by cross-complaints returned to them. The trial court did not specify the basis for awarding restitution nor did it state upon which cause of action it was making the award of restitution, but only the fourth and fifth causes of action provided for restitution. Cross-complainants' counsel stated at the hearing that cross-complainants were willing to accept "the restitution judgment." The trial court issued a default judgment[5] in favor of cross-complainants and against cross-defendant and US Power in the amount of $279,382.74, consisting of $246,100.00 for "damages," $32,243.24 in prejudgment interest, and $1,039.50 for costs.

Cross-defendant filed a motion for new trial arguing that the trial court issued the default judgment based only on the fourth cause of action alleged against US Power for rescission and restitution premised upon US Power not being a licensed contractor, and cross-defendant was not named as a cross-defendant in that cause of action; and the cross-complaint failed to give him adequate or reasonable notice that cross-complainants

---

[5]     As stated below, the trial court issued the default judgment on the fifth cause of action. The record before us does not expressly disclose that the trial court dismissed the other causes of action asserted against cross-defendant and US Power, but presumably it did—at least in effect—because the judgment was only on the one cause of action.

6

were seeking recovery of $246,000, paid by them under the agreement—the extent of the damages awarded. The trial court denied the motion, stating that, "The Judgment was, in fact, rendered on the fifth cause of action for rescission, and restitution was the $246,100 that had been paid by the cross-complainants." The trial court found that "[t]he cross-complaint gave [cross-defendant] adequate notice of the amount of damages sought" because the fifth cause of action for rescission and restitution seeking to rescind the agreement was asserted against cross-defendant and U.S. Power; the prayer for the fifth cause of action sought that the trial court rescind "all agreements and transactions between" cross-complainants, on the one hand, and cross-defendant and US Power, on the other hand, and that cross-defendant and US Power be ordered to pay all moneys paid by cross-complainants according to proof at trial; the fifth cause of action asserted against cross-defendant incorporated the allegations of the first four causes of action; and cross-complainants alleged in the first cause of action that cross-complainants had paid $246,000 under the agreement. The following exchange occurred between cross-complainant's counsel and the trial court, "[Cross-complainants' counsel]: As a practical matter, there is no distinction between the fourth and fifth cause[s] of action, and the rescission cause of action clearly gives notice to [cross-defendant]. [Trial court]: All right. Thank you."

## DISCUSSION

### 1.     *Applicable Law and Standard of Review*

In general, a defendant's default admits the truth of the allegations in a plaintiff's complaint and entitles the plaintiff to a judgment. "Substantively, '[t]he judgment by default is said to "confess" the material facts alleged by the plaintiff, i.e., the defendant's failure to answer has the same effect as an express admission of the matters well pleaded in the complaint.'" (*Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 823, italics omitted.) Therefore, generally, "In an appeal from a default judgment, review of the default judgment is limited to questions of jurisdiction,

7

sufficiency of the pleadings and excessive damages, if the damages awarded exceed the sum sought in the complaint. [Citations.]" (*Id*. at p. 824.) "[D]efendant may challenge the sufficiency of the evidence offered to support the default judgment. 'Plaintiffs in a default judgment proceeding must prove they are entitled to the damages claimed.' [Citations.] [¶] Although some cases have recited a 'general rule that sufficiency of the evidence [tendered in a default proceeding] cannot be reviewed on an appeal from a default judgment' [citation], that rule applies only 'as to matters for which no proof is required by virtue of the admission by default of the allegations of the complaint.' [Citation.] 'However, as to damages which, despite default, require proof the general rule does not apply.' [Citation.]" (*Kim v. Westmoore Partners, Inc*. (2011) 201 Cal.App.4th 267, 288.)

When the allegations of the complaint do not state a cause of action, the plaintiff is not entitled to a judgment, even if the defendant is in default. (*Taliaferro v. Taliaferro* (1959) 171 Cal.App.2d 1, 8-9; *Kim v. Westmoore Partners, Inc*., *supra*, 201 Cal.App.4th at pp. 281-282 [if the well-pleaded allegations of the complaint do not state any proper cause of action, the default judgment in the plaintiff's favor cannot stand].) "It is the policy of the law to favor, wherever possible, a hearing on the merits . . . ." (*Weitz v. Yankosky* (1966) 63 Cal.2d 849, 854.) We review an order denying a new trial motion for an abuse of discretion. (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 859; *Schelbauer v. Butler Manufacturing Co*. (1984) 35 Cal.3d 442, 452.)

### 2.    *Analysis*

Cross-defendant contends that the trial court erred in issuing the default judgment. Because cross-complainants have not pleaded or presented sufficient evidence to establish cross-defendant's liability for rescission damages, we reverse the judgment.

### a)    Licensed Contractor

Cross-defendant contends that the default judgment was based on the alleged lack of a contractor's license and that the trial court erred in issuing the default judgment

8

because they entered into the contract with a licensed contractor. Although it is unclear whether the trial court based the default judgment on the alleged lack of a contractor's license, to the extent it did, the trial court erred.

Section 7031, subdivision (a) provides that an unlicensed contractor may not bring an action to recover on a construction contract, and subdivision (b) provides that a person who utilizes the services of an unlicensed contractor may bring an action to recover all compensation paid to the unlicensed contractor.[6]

Cross-complainants alleged that they entered into an agreement with "US Power," which they define as US Power Investment Inc. aka US Power Construction, Inc. Cross-complainants attach a copy of the agreement to the cross-complaint, and it was purportedly executed by cross-complainant Sukamtoh and "US Power Construction, Inc." Cross-complainants state in their respondents' brief that, "in our case, Cross-Defendant US Power Investment, Inc. entered into the contract at issue with [cross-complainants] under the fictitious business name of 'US Power Construction, Inc. . . . and . . . US Power Investment, Inc. was never licensed under the name of US Power Construction, Inc.

It is undisputed that US Power Investment Inc. was a licensed contractor, and "US Power Construction Company" was a fictitious business name for US Power Investment Inc. Anyone regularly transacting business in California for profit under a fictitious business name must file and maintain a current fictitious business name statement (Bus. & Prof. Code, § 17910), and a licensed contractor may contract under its fictitious business name. "Use of a fictitious business name does not create a separate legal

_____

[6] Section 7031 provides in pertinent part, "(a) [N]o person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person, except that this prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029. [¶] (b) [A] person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract."

9

entity. . . . [A fictitious business name] '"is merely descriptive of the person or corporation who does business under some other name. *Doing business under another name does not create an entity distinct from the person operating the business*." [Citation.] The business name is a fiction, and so too is any implication that the business is a legal entity separate from its owner.' [Citations.]" (*Pinkerton's, Inc. v. Superior Court* (1996) 49 Cal.App.4th 1342, 1348.)

Section 7031, subdivision (a) "does not prohibit a contractor who is duly licensed and who contracts under another name from pursuing an action to collect for work done under the contract. [Citation.] " (*Pioneer Construction, Inc. v. Global Investment Corp.* (2011) 202 Cal.App.4th 161, 166, fn. 5.) "US Power Construction Company" was a name merely descriptive of "US Power Investment Inc." and it was not a separate entity. (*Pinkerton's, Inc. v. Superior Court*, *supra,* 49 Cal.App.4th at p. 1348.) Had the agreement been entered into by "US Power Construction Company," therefore, "US Power Construction, Inc." would not be in violation of section 7031.

Here, however, the contract was purportedly executed by "US Power Construction, Inc.," not "US Power Construction Company." Cross-complainants argue that use of the term "Inc." denotes the existence of a corporate business entity (Cal. Code Regs, tit. 2, § 21001, subd. (d)(1)(H)), and they "reasonably relied on the term 'Inc.' in believing that 'US Power Construction, Inc.' was a separate and incorporated legal entity . . . ." Cross-complainants also pleaded that US Power Construction, Inc. was a nonexistent entity. Cross-complainants, however, did not plead or provide evidence that they reasonably relied on the term "Inc." in believing that "US Power Construction, Inc." was a separate and incorporated legal entity . . . ."

If the name of the entity that enters into a contract to perform construction work is the same entity that holds a license, then the use of slightly different names for that entity on the contract would not bar its recovery under section 7031. (*Ball v. Steadfast-BLK* (2011) 196 Cal.App.4th 694, 702 [use of "Clark Air Conditioning & Heating" on the contract instead of the licensed entity, an individual under the fictitious business name of "Clark Heating and Air Conditioning," does not bar the individual from recovering for

10

work performed under the contracts]; also *Montgomery Sansome LP v. Rezai* (2012) 204 Cal.App.4th 786, 797 [a factual finding may be made that the name of the contracting party, Montgomery Sansome Ltd. LP, was the same as the licensed entity, Montgomery Sansome LP].)

Although the agreement was executed by US Power Construction, Inc., not US Power Investment, Inc. or US Power Construction Company*,* US Power Investment, Inc.'s license number and address was listed on the agreement. Similarly, the business card under the name US Power Construction, Inc. that cross-defendant provided to cross-complainants also stated US Power Investment, Inc.'s license number. Although the agreement was executed by "US Power Construction, Inc.," it is only slightly different from US Power Construction Company, the fictitious business name for US Power Investment Inc. US Power Investment Inc., therefore, did not violate section 7031.

### b) Failure of Consideration

Although cross-defendant contends that the default judgment was based only on the alleged lack of a contractor's license, cross-complainants contend that the trial court "properly rescinded the contract and awarded restitution" also because there was a substantial failure of consideration. A party to a contract may rescind and obtain restitution damages if there was a failure of consideration to support the contract. (Civ. Code, § 1689, subd. (b)(2); *Runyan v. Pacific Air Industries, Inc*. (1970) 2 Cal.3d 304, 317-318.)

In support of their contention, cross-complainants, citing to an attachment to cross-defendant's opening brief, state that the trial court found that "Cross-Defendants substantially breached the contract by abandoning the project, by refusing to complete its contracted work, by failing to pay subcontractors, by hiring unlicensed subcontractors, by permitting laborers to drink beer on the project, by performing substandard work which resulted cracks through the floor and foundation, by failing to construct the front bedroom windows, etc." The record belies cross-complainants contention because the trial court did not find that cross-defendant substantially breached the contract. The trial

court merely stated that cross-complainant "Sukamtoh attest[ed]" that "US Power" breached the contract as described above. Cross-complainants made such an allegation in the first cause of action against US Power for breach of contract. In addition, although the fifth cause of action incorporated the prior paragraphs of the cross-complaint, cross-complainants did allege in that cause of action that the contract should be rescinded because U.S. Power, or anyone else, breached the contract.

### c) Signatory to the Contract

Civil Code section 1692 provides, "When a contract has been rescinded in whole or in part, any party to the contract may seek relief based upon such rescission by. . . bringing an action to recover any money or thing owing to him by *any other party to the contract* as a consequence of such rescission or for any other relief to which he may be entitled under the circumstances . . . ." (*Nelson v. Sperling* (1969) 270 Cal.App.2d 194, 195 [the rescinding party may recover any money or thing owing to him by the other party to the contract as a consequence of such rescission]; italics added.) Cross-defendant was not a party to the contract. We therefore asked the parties to provide letter briefs whether cross-defendant can be held liable for restitution damages based on the pleadings and evidence provided to the trial court in support of the default judgment if he was not a signatory to the contract.

### i) Personal Liability

Cross-complainants contend in their letter brief that cross-defendant was personally liable for rescission damages because the fifth cause of action was asserted against him as well as US Power, and it "sought rescission of the contracts [*sic*] and restitution" based on their "unlawful activities and the unlawful nature of the [a]greement." Cross-complainants do not state what constituted cross-defendant's "unlawful activities and unlawful nature of the [a]greement," cite to the record, or otherwise develop this argument, including how these allegations establish cross-defendant's liability for restitution damages based upon rescission of a contract to which

12

he was not a named party. We therefore do not consider cross-complainants' argument. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["An appellate court is not required to examine undeveloped claims, nor to make arguments for parties"].)

Cross-complainants argue that cross-defendant was personally liable for rescission damages because the prayer for relief for the fourth and fifth causes of action requested that cross-defendant and US Power be ordered to "return all monies paid by" cross-complainants "according to proof at trial." The fourth cause of action, however, was not asserted against cross-defendant. In addition, as it relates to the fifth cause of action asserted against cross-defendant and US Power, requesting relief that cross-defendant be ordered to "return all monies paid by" cross-complainants does not constitute an allegation that cross-complainants paid monies to cross-defendant, particularly when such "return of all monies paid" by cross-complainants was specifically alleged to "according to proof at trial." Although cross-complainant Sukamtoh declared that cross-complainants paid $246,100—the principal amount awarded to cross-complainants under their claim for rescission and restitution—to US Power and cross-defendant, none of the copies of the checks attached to the declaration as "[t]rue and correct copies of these payments" were made payable to cross-defendant. The checks were made payable to "US Power" and others.

Cross-complainants also contend that cross-defendant was personally liable for rescission damages because cross-defendant "was intimately involved in the subject transaction," "violated his duty" to them, managed the corporation, and participated in the company's torts. Cross-complainants also refer to the declaration of cross-complainant Sukamtoh, in which he states that, "Whenever I discussed the progress of the Project, billing or payments, it was with" cross-defendant. Cross-complainants again, however, fail to develop this argument, and we therefore do not consider it. (*Paterno v. State of California*, *supra*, 74 Cal.App.4th at p. 106.)

13

ii) Alter Ego

Cross-complainants contend that cross-defendant was liable for rescission damages based on an "alter ego" liability theory. We disagree.

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. [Citations.] A corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation. [Citation.] Under the alter ego doctrine, then, when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners. [Citations.] The alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds. [Citation.] [¶] In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone. [Citations.]" (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538-539.)

"Although by a default a defendant admits the allegations in the complaint, the defendant who fails to answer admits only facts which are well pleaded. [Citation.] '"The allegation that a corporation is the *alter ego* of the individual stockholders is insufficient to justify the court in disregarding the corporate entity in the absence of allegations of facts from which it appears that justice cannot otherwise be accomplished."' [Citations.] [¶] In order to prevail in a cause of action against individual defendants based upon disregard of the corporate form, the plaintiff must plead and prove such a unity of interest and ownership that the separate personalities of the

14

corporation and the individuals do not exist, and that an inequity will result if the corporate entity is treated as the sole actor. [Citations.]" (*Vasey v. California Dance Co*. (1977) 70 Cal.App.3d 742, 749.)

Cross-complainants did not plead an alter-ego theory, and cross-complainants concede that they did not "explicitly" allege against cross-defendant an "alter ego" liability theory. Cross-complainants contend, however, that they alleged facts sufficient to constitute alter-ego liability because they alleged that cross-defendant, "using the corporate form of US Power Investment, Inc.[,] improperly entered into [the] contract using the name, US Power Construction, Inc., which is a nonexistent and unlicensed entity." Despite their contention to the contrary, there are no allegations in the cross-complaint, nor is there evidence, that cross-defendant "used" the corporate form of US Power Investment, Inc. to somehow enter into the contract using the name US Power Construction, Inc. There are no allegations, nor is there evidence in the record, concerning the person who executed the contract using the name US Power Construction, Inc. In addition, even if cross-complainants alleged the cross-defendant somehow "used" US Power Investment, Inc. to enter into the contract using the name US Power Construction, Inc., that allegation is insufficient to justify that the corporate entity be disregarded. Cross-complainants did not plead or prove such a unity of interest and ownership that the separate personalities of the US Power Construction, Inc. and cross-defendant did not exist, and that an inequity would result if the corporate entity was treated as the sole actor. [Citations.]" (*Vasey v. California Dance Co*., *supra*, 70 Cal.App.3d at p. 749.) Cross-complainants, therefore, may not recover from cross-defendant damages for rescission based upon an alter ego theory.

iii)     Responsible Corporate Officer Doctrine

Cross-complainants contend that cross-defendant, as the president and CEO of US Power Investment Inc., is personally liable for US Power Investment Inc.'s violation of section 7031, under the responsible corporate officer doctrine. "The responsible corporate officer doctrine was developed by the United States Supreme Court to hold

15

corporate officers in responsible positions of authority personally liable for violating strict liability statutes protecting the public welfare. [Citations.] It is a common law theory of liability separate from piercing the corporate veil or imposing personal liability for direct participation in tortious conduct." (*People v. Roscoe* (2008) 169 Cal.App.4th 829, 831-832.) "'Three essential elements must be satisfied before liability will be imposed upon a corporate officer under the responsible corporate officer doctrine: (1) the individual must be in a position of responsibility which allows the person to influence corporate policies or activities; (2) there must be a nexus between the individual's position and the violation in question such that the individual could have influenced the corporate actions which constituted the violations; and (3) the individual's actions or inactions facilitated the violations.' [Citations.]" (*Id*. at p. 839.)

We are unaware of any cases, nor have cross-complainants cited to any, that apply the responsible corporate officer doctrine to impose liability on a corporate officer for the failure to comply with section 7031. Section 7028 provides that it is a misdemeanor for any person to engage in the business of a contractor without having a license to do so, and imposes fines for persons convicted for that crime. Cross-complainants concede that the responsible corporate officer doctrine "has traditionally been applied to enforcing criminal and civil penalties." They contend however that we should apply the responsible corporate officer doctrine to a US Power Investment Inc.'s alleged violation of section 7031 because, according to cross-complainants, section 7031 is a strict liability statute that protects the public welfare. Except for reasons not applicable here, "The judicial doctrine of substantial compliance shall not apply under this section where the person who engaged in the business or acted in the capacity of a contractor has never been a duly licensed contractor in this state." (§ 7031, subd. (e).)

Even if the responsible corporate officer doctrine applies here, as discussed above, there is an insufficient showing that US Power Investment Inc. violated section 7031. Although the agreement was executed by "US Power Construction, Inc.," it is only slightly different from the fictitious business name for US Power Investment Inc., US

16

Power Construction Company.  US Power Construction, Inc., was not a separate entity from, and was merely descriptive of, US Power Investment Inc.  (*Pinkerton's, Inc. v. Superior Court*, *supra,* 49 Cal.App.4th at p. 1348.)

### d)     Other Contentions

Cross-complainants have not established cross-defendant's liability for rescission damages.  Thus, we do not reach cross-defendant's contention that the trial court erred in issuing the default judgment on the fourth cause of action because, according to cross-defendant, the default judgment was based on that cause of action to which he was not named as a cross-defendant.

## DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court to enter judgment in favor of cross-complainants and against US Power Investment Inc., aka US Power Construction, Inc., and that cross-complainants take nothing on their cross-complaint as against cross-defendant.  Cross-defendant is awarded his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MOSK, J.

I concur:



MINK, J.[*]

_____

[*]     Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

TURNER, P.J., Dissenting

I respectfully dissent. Here, the trial court reasonably could have ruled that cross-defendant, Tie Gao, was liable on a restitution theory. Our standard of review is quite limited: "'"Substantively, "[t]he *judgment by default* is said to 'confess' the material facts alleged by the plaintiff, i.e., the defendant's failure to answer has the same effect as an express admission of *the matters well pleaded in the complaint*."'" (*Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 823, second italics added.) The 'well-pleaded allegations' of a complaint refer to ""'all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.'"" (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6, quoting *Serrano v. Priest* (1971) 5 Cal.3d 584, 591.) [¶] Because the default *confesses* those properly pleaded facts, a plaintiff has no responsibility to provide the court with sufficient evidence to prove them—they are treated as true for purposes of obtaining a default judgment. (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1746.)" (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 281.) Further, "we disregard erroneous or confusing labels employed" by cross-complainants. (*Id*. at p. 282.) We do not review liability issues. (*Bell v. Feibush* (2013) 212 Cal.App.4th 1041, 1049; *Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1303.) Damage awards may be set aside only when they are totally unconscionable and without any justification. (*Uva v. Evans* (1978) 83 Cal.App.3d 356, 364 ["just as the trial court need not sit idly by and watch injustice be done through an improper award by the jury, we know of no statutory or constitutional barrier which requires an appellate court to ignore gross injustice in the award of damages simply because the judgment was procured by way of default"]; accord *Kim v. Westmoore Partners, Inc.*, *supra*, 201 Cal.App.4th at p. 288 [same].)

Cross-complainants, Denni Widjaja and Alex Sukamtoh, entered into a contract with US Power Construction, Inc., a nonexistent corporation. US Power Construction Company is a fictitious business name of US Power Investment, Inc. US Power

Investment, Inc. is a licensed contractor. The chief executive officer and president of US Power Investment, Inc. is Mr. Gao. In addition, the Secretary of State's records indicate Mr. Gao is also the secretary, chief financial officer, sole director and agent for service of process of US Power Investment, Inc. But no contract was entered into with the licensed entity.

Mr. Sukamtoh only met with Mr. Gao. All discussions concerning the construction project were with Mr. Gao. The business card provided by Mr. Gao indicated he was with US Power Construction, Inc., a nonexistent corporation. The contractor's license number on Mr. Gao's business card was for US Power Investment, Inc. which is licensed. All discussions concerning payments were made with Mr. Gao. In Mr. Sukamtoh's opinion, the contractor was Mr. Gao who was unlicensed. No other principal of US Power Investment, Inc., the licensed contractor, ever appeared at the job site, only Mr. Gao.

I would affirm the judgment as to the fifth cause of action for restitution, which incorporates all of the licensing and failure of consideration allegations. The fifth cause of action explicitly identifies Mr. Gao as a cross-defendant. Cross-complainants entered to a contract with a nonexistent corporation. There is evidence that Mr. Gao was acting as an unlicensed contractor. And, there is evidence Mr. Gao used a nonexistent unlicensed entity, US Power Construction, Inc., to enter into a contract. Cross-complainants were entitled to rescind the contract on two grounds. First, cross-complainants were entitled to rescind based upon partial failure of consideration. (Civ. Code, § 1689, subd. (b)(4); *Wyler v. Feuer* (1978) 85 Cal.App.3d 392, 403-404.) Second, cross-complainants were entitled to rescind the contract because Mr. Gao conducted himself illegally by acting as an unlicensed contractor. (Civ. Code, § 1689, subd. (b)(5); *Tiedje v. Aluminum Taper Milling Co.* (1956) 46 Cal.2d 450, 454.)

And, the trial court reasonably could have found there was no requirement that anything be restored to Mr. Gao. Cross-complainants have been left with incomplete construction work performed on their home. There is no requirement of full restoration

2

when it would be impossible or otherwise impracticable.  (*Carruth v. Fritch* (1950) 36 Cal.2d 426, 430 ["'where, without any fault of the plaintiff, there have been peculiar complications which make it impossible for plaintiff to offer full restoration, . . . the circumstances are such that a court of chancery may by final decree fully adjust the equities between the parties'"]; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 942, p. 1036 ["Where, without the plaintiff's fault, restoration has become impossible, and the court may by its decree fully adjust the equities between the parties."]; Rest.2d Contracts, § 384, com. c., p. 246 [no need to return property "if the property was worthless when received or if its destruction or loss was caused by the other party or by its own defects"].)  Thus, without consideration of the other counts, I would affirm the judgment as to the restitution cause of action.


TURNER, P. J.

3